PER CURIAM.
The Florida Board of Bar Examiners has filed a petition to amend the rules of the Supreme Court relating to admissions to the Bar. These proposed rule changes include a single compilation of rules to be adopted by the Court, eliminating the distinction between the rules adopted by the Court entitled “Rules of the Supreme Court Relating to Admissions to the Bar” and the rules adopted by the Board entitled “Rules and Regulations of The Florida Board of Bar Examiners.”
This Court invites comment by all interested persons directed to these proposed amendments. These comments and any request for oral argument must be filed in the Supreme Court no later than January 15, 1981. Oral argument is scheduled for Monday, February 9, 1981. The petition and the proposed amendments are appended to this order. The appendix filed by the Board and referred to in its petition, which explains the proposed rule changes in more detail, is available for review in the clerk’s office of the Supreme Court.
It is so ordered.
SUNDBERG, C. J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
APPENDIX
COMES NOW the Florida Board of Bar Examiners (hereinafter referred to as the “Board”), by and through its undersigned attorney, and petitions this Court for approval of certain amendments to the Rules of the Supreme Court of Florida Relating to Admissions to the Bar, and in support thereof, says:
1. The Board has been engaged in an ongoing review of the Rules of the Supreme Court of Florida Relating to Admissions to the Bar in an effort to provide clarity and uniformity, and to assist the Board in the efficient admission of all qualified applicants with dispatch.
2. Article II, Section 10 of the Rules (hereinafter referred to as the “10/20 Rule”) currently provides the basis upon which examination papers are graded. The grades received by the top 10% of those examined in each part of the examination are added, and the total is divided by the number of examinees comprising the top 10% in that part. Those examinees who receive a grade above or within twenty points below such result are credited with a passing score.
3. Recent statistical studies have shown there are four aspects of the current bar examination procedures that may result in erroneous pass/fail decisions on individual applicants. These potential problem areas are summarized below. A more complete discussion of these problems is presented in composite Exhibit A.
A. Within a given essay question in Part I, a particular issue may have a much greater or lesser influence on determining an applicant’s standing relative to other applicants than is indicated by the number of points assigned to that issue.
B. Within Part I of the examination, the six components (four essay questions plus two machine-scored sections) are not weighted equally in terms of their influence in determining an applicant’s relative standing on this part of the examination.
C. The three parts of the examination are not equally difficult to pass. Thus, one part carries more weight in determining an applicant’s pass/fail status than does some other part. *591 Moreover, the relative importance of a given part varies across administrations and is easily influenced by extraneous factors.
D. The quality of performance required for passing a given part of the examination can vary across administration of it; i. e., it may be harder to pass a given part of the examination on one administration than it is on another. This is due to the failure of the 10/20 rule to adequately correct for differences in test difficulty across administrations.
The linchpin of the existing system for setting the pass/fail line on a part is the 10/20 rule provided in Article II, Section 10. This rule determines an applicant’s pass/fail status on each part in terms of how well that applicant performed relative to the performance of other applicants who took that part at the same time. The foregoing problems arise primarily because this rule does not fully adjust for differences across administrations in the difficulty of the questions asked, the leniency of readers for Part I, or the ability level of the applicants taking the test. The 10/20 rule also tends to ignore inequities across administrations that may arise due to differences in the shape of the distribution of scores, the degree to which scores spread out from the average score, and the presence of atypically high or low scores in the top 10 percent.
4.The proposed Rules provide for the use of recognized statistical procedures which when applied to the examination assure equal weighting of essay questions on Part A (formerly Part I) and a consistent standard for determination of minimum technical competence from exam to exam.
Article VI, Section 7 of the proposed Rules implements the new statistical method prepared by the Board’s consultant. The recommended pass/fail line for the General Bar Examination (Parts A and B) is 133. Please see Exhibits Al and A2 which refer to the many statistical studies run on multiple administrations which were utilized to fix the historical basis for this recommendation. Statistical data for the MPRE is limited by reason of the fact that it has only been administered twice in 1980. A study of that which is available led the Board to recommend a scaled score of 70. It should be noted scaled MPRE scores range from a low of 50 to a maximum of 150 based on a 50-item, two-hour examination. The selected score would pass 91% of the 4,208 persons sitting nationally in March of 1980. Please see Exhibits A3 and A4.
5. Applicants may under the proposed Rules submit to either of two methods for passing the General Bar Examination. While it is anticipated that for most applicants it will be more difficult for them to pass the examination with the multiple cutoff method, it also may be easier for some because of the limitation of areas examined on each part compared to the compensatory method. The multiple cut-off method also preserves the present procedure for utilizing MBE scores attained in other jurisdictions. Please see Article VI, Section 6 of the proposed Rules.
6. Current Rules provide for Part I (Florida) and Part III (Professional Responsibility) of the Florida Bar Examination to be administered four times each year, with Part II (Multistate Bar Examination) administered simultaneously with the other parts twice each year. The proposed Rules provide for a reduction in the number of administrations of the “Florida” (Part I) examination to coincide with the administration of the Multistate Bar Examination (Part II) given twice each year. A separate Multistate Professional Responsibility Examination administered three times annually by the National Conference of Bar Examiners and its designee will replace the present Board-developed Professional Responsibility examination. The Board anticipates a greater number of examinees submitting to the General Bar Examination as a result of the reduction in the number of examination administrations.
7. Article VI, Section 7 of the proposed Rules provides for the use of multiple calibrated readers for the grading of essay answers. The recommendation to use multiple readers per question was based on sev *592 eral considerations. First, research on examinations in other jurisdictions has indicated that a given reader is only slightly more consistent with himself (or herself) than that reader is with some other reader. And, this slight edge may be due to idiosyncrasies that have nothing to do with the quality of the answer that is written. Second, by using appropriate calibration techniques and reducing the judgment burden and workload on an individual reader, one can improve the overall precision of the scoring process over that of having a single reader per question. Third, having multiple readers per question allows for an independent second reading of the essay answers of the applicants whose performance on the entire examination placed them near the pass/fail line. This second reading is essential if the examination is to meet the minimum standards of measurement precision for a licensing test. And finally, the use of multiple readers per question would greatly expedite the scoring process and thereby assure release of grades for a greater number of papers per examination, which the reduction in number of examinations would cause, without extending the grading period.
8.In addition to the sweeping changes relative to the Bar Examination scoring process, the Board has included recommended Rules changes as follows:
Article III, Section 3 of the proposed Rules contains a proposal which allows for the withdrawal of an application for admission to The Florida Bar at any time, but preserves the Board’s jurisdiction to investigate and adjudicate the case to conclusion.
Article III, Section 4 of the proposed Rules provides authority under which the Board may defer its recommendation to the Court following a formal hearing where sufficient time has not passed since the occurrence of the cause of Specifications to permit the Board to evaluate the applicant’s claims for rehabilitation.
The rationale for each of these Rules changes is covered at the end of each section.
Other Rules changes previously granted by the Supreme Court but not yet published are included as follows:
Article VI, Section 9
Article III, Section 1(a)
Informally granted Article V, Section 10
9. The current configuration of the Rules of the Supreme Court of Florida Relating to Admissions to the Bar includes Rules adopted by the Court and Rules promulgated by the Board which are approved by the Court. The proposed Rules eliminate such distinction and will appear as a single compilation of Rules to be adopted by the Court. Additionally, the proposed Rules have been substantially re-indexed under appropriate subject areas and rearranged in more logical fashion. A copy of the current Rules as printed and distributed by the Board is attached hereto as Exhibit B and contains references to the proposed Articles and Sections to which they have been transferred.
10. The proposed Rules do not include the adoption by reference of the Code of Recommended Standards of Bar Examiners promulgated and approved by the American Bar Association. This provision currently appears in Article I, Section 1 of the Rules. A new Code of Recommended Standards of Bar Examiners was adopted by the American Bar Association on August 5,. 1980. Many of its provisions do appear in the proposed Rules; however, some provisions in the Code adopted May 21,1958 and in the newly adopted Code of August 5, 1980 continue to be inconsistent with the proposed Rules. Accordingly, no reference to the Code appears in the proposed Rules. A copy of the Code of Recommended Standards of Bar Examiners adopted August 5, 1980 is attached hereto as Exhibit C for information only.
11. Attached to the Petition as Exhibit D is a compilation of the proposed Rules. Said Exhibit reflects the present wording of each rule together with the proposed rule reflecting the amendments and deletions. Brief narrative explanations of the rationale for such amendments and deletions are provided where appropriate.
*593 12. The Board, its staff and the Board’s consultant will be pleased to appear in support of this Petition and to furnish such additional information as may be appropriate. Upon approval by the Court, it will be necessary for the Board to publish and distribute copies of the aforesaid Rules as amended prior to implementation of the Rules. Accordingly, the Board recommends a substantial period of time within which to insure an orderly transition from the Rules now in effect to the Rules as proposed to be amended. It is anticipated that the normal processing of all applications for admission to the Florida Bar Examination will be accomplished under the current rules through the administration of the Florida Bar Examination in May of 1981. The proposed Rules, if adopted by the Court, should become effective at Midnight, May 31,1981. Examinees who achieve a passing score on any part of the Florida Bar Examination under the current Rules prior to May 31, 1981 (the effective date of the proposed Rules) will be entitled to retain that passing status for the equivalent Part for the time period provided under Article VI, Section 9 of the proposed Rules. It should be noted that the October Florida Bar Examination consisting of Part I (Florida) and Part III (Professional Responsibility) will be eliminated under the proposed Rules if the effective date of the proposed Rules is May 31, 1981. Part III (Professional Responsibility) of the Florida Bar Examination will be replaced by the Multistate Professional Responsibility Examination to be administered in August and November of 1981, and in March, August and November thereafter. Law school seniors planning to sit for the October 1981 Florida Bar Examination will be required to wait for the February 1982 administration as to the General Bar Examination consisting of Part A (Florida) and Part B (Multistate).
WHEREFORE, the Board prays for the entry of an Order amending, confirming and adopting the Rules Relating to Admission to The Florida Bar which are reproduced in full and attached to this Petition as Exhibit D. The Board respectfully requests the entry of such order as expeditiously as possible to become effective at Midnight, May 31, 1981.
DATED this 31st day of October, 1980.
Respectfully submitted,
FLORIDA BOARD OF BAR EXAMINERS
PAUL B. ANTON, Chairman
By: (si C. Graham Carothers C. GRAHAM CAROTHERS Attorney to the Board
RULES RELATING TO ADMISSION TO THE FLORIDA BAR
INDEX
Florida Board of Bar Examiners
Registration of Law Students Educational, Character and Fitness Requirements of Applicants
Applications
Schedule of Fees
Examinations
Certification to the Supreme Court
TABLE OF CONTENTS

*594

*595

Proposed Article I, Section 1

Article I, Section 1 as it now appears:
Section 1. The admission of attorneys to the practice of the profession of law is a judicial function. All individuals who seek the privilege of practicing law in the State of Florida shall submit to Part I and Part III of the Florida Bar Examination and shall provide such score from submission to Part II as specified in Article II, Section 10(c) of these Rules. The Court promulgates the rules hereinafter set forth and adopts and approves the Code of Recommended Standards of Bar Examiners, adopted by the American Bar Association on May 21,1958, promulgated and approved by the National Conference of Bar Examiners and the Association of American Law Schools, except where such standards are inconsistent with the rules of this Court or the rules of the Board hereinafter established.
Proposed Article I, Section 1 would appear:
ARTICLE I
FLORIDA BOARD OF BAR EXAMINERS
Section 1. The admission of attorneys to the practice of the profession of law is a judicial function. All individuals who seek the privilege of practicing law in the State of Florida shall submit to Par-t-I-and-P-art III of the Florida Bar Examination, and shall provide such score from submission to Part II as specified in Article II, Section 10(c) of these Rules; — The-Geurt promulgates the rules hereinafter set forth and adopts and approves the Code of Recommended — Standards—of—Bar—Examiners^ adopted-by- the American Bar Association on May 21,1958, promulgated and approved by the National-Conference of Bar Examiners -and-the Association of American Law Schools, except where such standards are inconsistent with the rules of this Court,-or the rules of the-Board- hereinafter established,
REASONS: Part I and III and Part II references are covered now by the definition of the Florida Bar Examination under Article VI, Section 1. The salient portion of the Code of Recommended Standards of Bar Examiners are currently recorded in the Rules and the Code, approved on August 5, 1980 directly conflicts with certain aspects of the recommended rules. The recently approved code is Attachment # 1.

Proposed Article I, Section 2

Article I, Section 2 as it now appears:
Section 2. There is hereby created a Florida Board of Bar Examiners consisting of twelve members of The Florida Bar. The members now constituting said Board shall continue to hold office for the terms now appointed. Their successors shall continue to be selected and appointed in the manner now prescribed in Article I of the Rules of the Supreme Court of Florida Relating to Admissions to the Bar, effective November 1, 1955. As terms expire all appointments shall be for five years, and any vacancy occurring during any term shall be filled by appointment. No person appointed by the Court as a result of a vacancy occurring during a term shall be appointed for less than five years, and the term of all such appointments shall be extended to October 31 of the last year of such term. *596 Such members shall be members of The Florida Bar and shall possess the qualifications prescribed by the Code of Standards of Bar Examiners.
Proposed Article I, Section 2 as it would appear:
Section 2. There is hereby created a Florida Board of Bar Examiners consisting of twelve members of The Florida Bar. The members now constituting said Board shall continue to hold office for the terms now appointed. Their successors shall continue to be selected and appointed in the manner now prescribed in Article I of the Rules of the Supremo Court of Florida Relating to Admissions to The Florida Bar. effective November 1, 1955; As terms expire all appointments shall be for no more than five years, and any vacancy occurring during any term shall be filled by appointment. No person appointed by the Court as a result of a vacancy occurring during a term shall be appointed for less more than five years, and the term of all such appointments shall be extended to October 31 of the last year of such term. Such members shall be members of The Florida Bar and shall possess — the- qualifications prescribed by the Code of Standards-of Bar Examiners.
REASONS: (1) Present “Rules Relating to Admission to The Florida Bar” consists of 2 parts: (a) “Rules of the Supreme Court of Florida Relating to Admissions to the Bar” and (b) “Rules and Regulations of the Florida Board of Bar Examiners.” The current distinction between these 2 parts is removed, and all rules are now rules of the Supreme Court of Florida.
(2) It should be noted that the current membership of the Board will consist of 7 members with 1 year of experience or less beginning on November 1, 1980 based upon the appointment of members to fill out expired terms. The changes above allow for Supreme Court adjustment of the membership rotation date while retaining the continuity afforded by the 5 year term. Please see Article I, Section 3(b).

Proposed Article I, Section 3

Article I, Section 3 as it now appears:
Section 3. The Board of Governors of The Florida Bar shall submit to the Court not less than thirty days prior to the expiration of any term, and in case of a vacancy, within thirty days thereafter, its recommendations with respect to appointees. Such group of recommended appointees shall be thrice the number to be appointed. The following provisions will be pertinent in connection with the nominations to membership on the Board:
No change.

Proposed Article I, Section 3(a)

Article I, Section 3(a) as it now appears:
3. Qualifications. A bar examiner should be a practicing attorney with scholarly attainments and an affirmative interest in legal education and requirements for admission to the bar.
No change.

Proposed Article I, Section 3(b)

Article I, Section 3(b) as it now appears:
b. Tenure. A bar examiner should be appointed for a fixed term, but should be eligible for reappointment if his work is of high quality. Members of bar examining authorities should be appointed for staggered terms to insure continuity of policy, but there should be sufficient rotation in the personnel of each authority to bring new views to the authority and to insure continuing interest in its work.
Proposed Article I, Section 3(b) would appear:
b. Tenure. A bar examiner should be appointed for a fixed term, but should be eligible for reappointment if his the examiner’s work is of high quality. Members of bar examining authorities the Board should be appointed for staggered terms to insure continuity of policy, but there should be sufficient rotation in the personnel of eaeb authority the Board to bring new views to the authority Board and to insure continuing interest in its work.
REASONS: Appropriate references to this Board and eliminate gender problems.
Article I, Section 3(c) as it now appears:
*597 c. Compensation. The compensation, if any, which a bar examiner receives should not be directly dependent upon the number of persons taking the bar examination.
REASONS: Delete this section as Section 5 of the current Rules makes this unnecessary.

Proposed Article I, Section 3(c):

Article I, Section 3(d) as it now appears:
d. Devotion to Duty. A bar examiner should be willing and able to devote whatever time is necessary to perform the duties imposed upon him.
Proposed Article I, Section 3(c) would appear:
dr c. Devotion to Duty. A Bar Examiner should be willing and able to devote whatever time is necessary to perform the duties imposed upon him of examiner.

Proposed Article I, Section 3(d) :

Article I, Section 3(e) as it now appears:
e. Essential Conduct. A bar examiner should be conscientious, studious, thorough and diligent in learning the methods, problems and progress of legal education, in preparing bar examinations, and in seeking to improve the examination, its administration and requirements for admission to the Bar. He should be just and impartial in recommending the admission of applicants. He should exhibit courage, judgment and moral stamina in refusing to recommend applicants who lack adequate general and professional preparation or who lack good moral character.
Proposed Article I, Section 3(d) would appear:
e, d. Essential Conduct. A bar examiner should be conscientious, studious, thorough and diligent in learning the methods, problems and progress of legal education, in preparing bar examinations, and in seeking to improve the examination, its administration and requirements for admission to the Bar. He Each examiner should be just and impartial in recommending the admission of applicants, — He and should exhibit courage, judgment and moral stamina in refusing to recommend applicants who lack adequate general and professional preparation or who lack good moral character.

Proposed Article I, Section 3(e):

Article I, Section 3(f) as it now appears:
f.Adverse Influences, Conflicting Duties and Inconsistent Obligations. A bar examiner should not have adverse interests, conflicting duties nor inconsistent obligations which will in any way interfere or appear to interfere with the proper administration of his functions. Appointment or election to the bench at any level of the court system, federal, state, county or municipal, shall constitute a disability to serve as a bar examiner so long as such individual shall continue to serve in such capacity. A bar examiner should not participate directly or indirectly in courses for the preparation of applicants for bar admission nor act as a trustee of a law school or of a university of which a law school is a part or with which a law school is affiliated. A bar examiner should so conduct himself that there may be no suspicion that his judgment may be swayed by improper considerations.
Proposed Article I, Section 3(e) would appear:
L e. Adverse Influences, Conflicting Duties and Inconsistent Obligations. A Bar examiners should not have adverse interests, conflicting duties nor inconsistent obligations which will in any way interfere or appear to interfere with the proper administration of his their functions. Appointment or election to the bench at any level of the court system, federal, state, county or municipal, shall constitute a disability to serve as a bar examiner so long as such individual shall continue to serve in such capacity. A Bar examiners should not participate directly or indirectly in courses for the preparation of applicants for bar admission nor act as a trustee of a law school or of a university of which a law seheol-is -a part or with which a law school is affiliated. A Bar examiners should so conduct himself themselves that there may be no suspicion *598 that his their judgment may be swayed by improper considerations.

Proposed Article I, Section 4:

Article I, Section 4 as it now appears:
Section 4. During the month of October of each year the Board shall designate a Vice Chairman who shall hold office for a period of one year beginning on the ensuing November 1. In October of each succeeding year the previously elected Vice Chairman shall automatically be elevated to the office of Chairman for a period of one year beginning November 1 following his term as Vice Chairman. Such designation shall be determined by majority vote. In the event of an irreconcilable tie vote, such fact shall be certified to the Supreme Court and it shall designate the Vice Chairman for the ensuing year.
Proposed Article I, Section 4 would appear:
Section 4. During the month of October of each year the Board shall designate a Vice Chairman who shall hold office for a period of one year beginning on the ensuing November 1. In October of each succeeding year the previously elected Vice Chairman shall automatically be elevated to the Office of Chairman for a period of one year beginning November 1 following his such person’s term as Vice Chairman. Such designation shall be determined by majority vote. In the event of an irreconcilable tie vote, such fact shall be certified to the Supreme Court, and it shall designate the Vice Chairman for the ensuing year.

Proposed Article I, Section 5

Article I, Section 5 as it now appears:
Section 5. The members shall serve without compensation but shall be reimbursed for reasonable traveling and subsistence expenses incurred in the performance of their services for the Board. The Board may from time to time elicit the assistance of other members of The Florida Bar in proctoring the bar examination, and in so doing may reimburse those other members of The Florida Bar assisting for reasonable subsistence expense.
No change.

Proposed Article I, Section 6

Article I, Section 6 as it now appears:
Section 6. The offices of the Board shall be maintained in Tallahassee, Florida.
No change.

Proposed Article I, Section 7(a), (b) & (c)

Article I, Section 7(a), (b) & (c) as it now appears:
Section 7. (a) Meetings of the Board may be held at such places and times as may be fixed from time to time by the Board.
(b) Hearings shall be conducted by the Board in the State of Florida on the second Fridays of March, June, September and November of each year and may be conducted at such other times and at such places as may be fixed by the Board.
(c) Upon giving reasonable notice, the Chairman of the Board may conduct a meeting of the Board by conference telephone call for routine administrative action or for emergency action.
No change.

Proposed Article I, Section 8

Article I, Section 8 as it now appears:
Section 8. The Board shall make such disbursements as are required to pay the necessary expenses of the Board. Annually it shall prepare a budget and submit the same to the Supreme Court for its approval. It shall cause proper books of account to be kept and shall have an annual audit made by the State Auditing Department or a Certified Public Accountant. Such annual audit shall be filed with the Clerk of the Supreme Court of Florida.
Proposed Article I, Section 8 as it would appear: .
Section 8. The Board shall make such disbursements as are required to pay the necessary expenses of the Board. Annually it shall prepare a budget and submit the *599 same to the Supreme Court for its approval. It shall cause proper books of account to be kept and shall have an annual audit made by the State Auditing Department Office of the Auditor General or a Certified Public Accountant. Such annual audit shall be filed with the Clerk of the Supreme Court of Florida.
REASONS: Proper current title of state auditor.

Proposed Article I, Section 9

Article II, Section 9 as it now appears:
Section 9. The Board shall employ an Executive Director and such other assistants and clerks as it may deem necessary. It shall provide for the compensation of such employees and shall pay all other expenses. All employees shall be bonded as may be directed by the Board.
Article, I, Section 9 as it would appear:
ARTICLE II
GENERAL POWERS OF THE BOARD
Section 9. The Board shall employ an Executive Director and such other assistants and clerks as it may deem necessary. It shall provide for the compensation of such employees and shall pay all other expenses. All employees shall be bonded as may be directed by the Board.
REASONS: Properly falls under Article I which defines the Board and its powers and modernizes the nomenclature.

Proposed Article I, Section 10

Article II, Section 13 as it now appears:
Section 13. Whenever any person subpoenaed to appear and give testimony or to produce books, papers or documents, refuses to appear or testify before the Board, or any committee thereof, or to answer any questions, or to produce such books, papers or documents, he shall be in contempt of the Court. The Board shall report the fact that a person under subpoena is in contempt of the Court for such proceedings against such person as the Court may deem advisable.
Proposed Article I, Section 10 as it would appear:
Section 43 10. Whenever any person subpoenaed to appear and give testimony or to produce books, papers or documents, refuses to appear or testify before the Board, or any division or committee thereof, or to answer any questions, or to produce such books, papers or documents, he such person shall be in contempt of the Court. The Board shall report the fact that a person under subpoena is in contempt of the Court for such proceedings against such person as the Court may deem advisable.

Proposed Article I, Section 11

Article II, Section 14 as it now appears:
Section 14. The Board may resolve that committees on character, fitness and general qualifications should be appointed in some or all of the counties or judicial circuits in the State of Florida. Should it so resolve, the Board of Governors of The Florida Bar shall submit to the Board from time to time and as requested by the Board a group of recommended appointees. The group shall consist of thrice the number to be appointed. The Board shall, subject to the approval of the Court, select the appointees from this group. Such committees shall be known as “Character and Fitness Committees” and shall be advisory to the Board and in the performance of their advisory duties, they shall have such powers as the Court shall fix.
No change.
Article II, Section 15 as it now appears:
Section 15. Subject to the approval of the Court, the Board may adopt rules and regulations not inconsistent with these rules.
Delete this section.
REASONS: The Article is redundant under the proposed combined Rules.

Proposed Article I, Section 12

Article II, Section 16 as it now appears:
Section 16. A permanent committee to coordinate the work of the Bench, Bar, law schools and bar examiners and make *600 recommendations to this Court concerning the same from time to time is hereby created and established. Such committee shall consist of two members of the Supreme Court to be designated by said Court, two members of the Board of Bar Examiners to be designated by such Board, two members of The Florida Bar to be designated by the Board of Governors of The Florida Bar, the Deans of all accredited Florida law schools or colleges, and such law student representation as the Court may from time to time provide. The committee shall convene at the pleasure of the committee members from the Supreme Court, one of whom shall be the presiding officer.
No change.

Proposed Article I, Section 13

Article III, Section 17 as it now appears:
Section 17. Subject to the approval of the Court, the Board may classify applicants and law students and fix the charges, fees and expenses which shall be borne by them.
Proposed Article I, Section 13 as it would appear:
ARTICLE III
APPLICANTS
Section 47 13. Subject to the approval of the Court, the Board may classify applicants and law students and fix the charges, fees and expenses which shall be borne by them.
REASONS: Logically falls under Article I of new Rules.

Proposed Article II, Section 1

Rule IY, Section 30 as it now appears:
Section 30. Every person intending to apply for admission to The Florida Bar shall, within one hundred fifty (150) days following the commencement of the study of law in an accredited law school, register with the Board by filing an Applicant’s Questionnaire and Affidavit as a registrant upon the forms supplied by the Board, including the documents and papers specified in Rule II, Section 10, except for the filing of the Certificate of Dean as specified in Rule II, Section 10(b)(1); a fee of $40.00 as specified in the provisions of Rule V, Section 52; and such other papers as may from time to time be reasonably required by the Board. The Board will consider as timely filed any registration postmarked or received one hundred fifty (150) days following the commencement of the study of law.
Proposed Article II, Section 1 as it would appear:
RULE-4-V ARTICLE II
REGISTRATION OF LAW STUDENTS
Section 30 1. Every person intending to apply for admission to The Florida Bar shall, within one hundred fifty (150) days following the commencement of the study of law in an accredited law school, register with the Board by filing an Applicant’s Questionnaire and Affidavit (Form 11 as a registrant upon the forms supplied by the Board, including the documents and papers specified in Rule II, Section 10, Article IV. Section 4 except for the filing of the Certificate of Dean as specified in Rule-IIr-Seetion- 10(b)(1); Article IV. Section 4(bl(l): a fee of $40.00 as specified in the provisions of Rule V, Section 52 Article V. Section 3: and such other papers as may from time to time be reasonably required by the Board. The Board will consider as timely filed any registration postmarked or received one hundred fifty (150) days following the commencement of the study of law.
REASONS: Renumber reference to article and section numbers.

Proposed Article II, Section 2

Rule IV, Section 31(a) as it now appears:
Section 31. (a) If any person shall fail to so register but shall do so within one hundred sixty-five (165) days following the commencement of the study of law and shall fully respond to requests contained in notice of untimely filing within a period not to exceed ten (10) days from *601 mailing of such notice, such registration shall be accepted with a fee of $50.00 as specified under Rule V, Section 53(a).
Proposed Article II, Section 2 as it would appear:
Section 31(a) 2. If any person shall fails to so timely register but shall do does so within one hundred sixty-five (165) days following the commencement of the study of law and shall fully respond to requests contained in a notice of untimely filing within a period not to exceed ten (10) days from mailing of such notice, such registration shall be accepted with a fee of $50.00 as specified under Rulo V, Section 53(a) Article V. Section 4.

Proposed Article II, Section 3

Rule IV, Section 31(b) as it now appears:
(b) If any person shall fail to so register but shall do so within two hundred fifty (250) days following the commencement of the study of law, the fee shall be $75.00 as specified under the provisions of Rule V, Section 53(b).
Proposed Article II, Section 3 as it would appear:
(b) Section 3. If any person shall fails to so timely register but shall do does so within two hundred fifty (250) days following the commencement of the study of law, the fee shall be $75.00 as specified under the provisions of Ruie-Y, Section 53(b) Article V. Section 5.

Proposed Article II, Section 4

Rule IV, Section 31(c) as it now appears:
(c) If any person shall fail to so register within two hundred fifty (250) days following the commencement of the study of law, the fee shall be $100.00 as specified under the provisions of Rule V, Section 53(c).
Proposed Article II, Section 4 as it would appear:
(e) Section 4. If any person shall fails to so register within two hundred fifty (250) days following the commencement of the study of law, the fee shall be $100.00 as specified under the provisions of Rule V, Section 53(c) Article V. Section 6.

Proposed Article II, Section 5:

Rule IV, Sections 32 and 33 as they now appear:
Section 32. The Board may at any time find it advisable to make further inquiry into the character, fitness and general qualifications of a registrant. In such case the registrant may be required to pay a fee of $50.00 as is prescribed in Section 54 and the Board shall conduct an investigation and otherwise inquire into the character, fitness and general qualifications of such registrant and in every such investigation and inquiry the Board shall have all of the powers given it in respect to inquiry and investigation of applicants for admission to the Bar.
Section 33. If, after such investigation and inquiry, the Board shall find that the registrant is unfit, or the Board is in doubt about the registrant’s fitness, such determination shall be certified to the Supreme Court and the Executive Director shall transmit the file and other available information to the Supreme Court for such action in the particular case as the Court deems appropriate.
Proposed Article II, Section 5 as it would appear:
Section 33r 5. A basic character and fitness investigation shall be conducted in areas of possible concern on each student registrant. Section 32 The Board may at any time find it advisable to make further inquiry into the character, fitness and general qualifications of a registrant. In such case the registrant may be required to pay a fee of $50.00 as is prescribed in Article V. Section 54 7. and the Board shall conduct-an investigation and otherwise inquire into-the character, fitness and general qualifications of such registrant.-.and In every such investigation and inquiry the Board shall have all of the powers given it in respect to inquiry and investigation of applicants for admission to the Bar. If, after such investigation and inquiry, the Board shall find that the registrant is unfit, or the Board is in doubt about the registrant’s fitness, such determination shall be certified to the Supreme Court and the Executive Director *602 shall transmit the file and other available information to the Supreme Court for such action in the particular case as the Court deems appropriate.
REASONS: Logical combination of subject areas.

Proposed Article II, Section 6

Rule IV, Section 34 as it now appears:
Section 34. The Applicant’s Questionnaire and Affidavit executed by a registrant shall not be deemed an application for admission into the Florida Bar Examination or an application for admission into The Florida Bar unless and until the registrant files a supplement to said Questionnaire and Affidavit as is provided for in Section 11.
Proposed Article II, Section 6 as it would appear:
Section 34 6. The Applicant’s Questionnaire and Affidavit executed by a registrant shall not be deemed an application for admission into the Florida Bar Examination or an application for admission into The Florida Bar unless and until the registrant files a supplement to said Questionnaire and Affidavit as is provided for in Article IV. Sections 6 and 7 44.
Rule IV, Section 35 as it now appears:
Section 35. The Board shall conduct an investigation and otherwise inquire into and determine the character and fitness and general qualifications of every applicant for admission and this requirement shall be complied with although the Board may have previously conducted such an inquiry and investigation subsequent to the filing of Applicant’s Questionnaire and Affidavit as a registrant. The absence of such investigation and inquiry by the Board subsequent to the filing of the Applicant’s Questionnaire and Affidavit as a registrant shall not be deemed an approval of the character, fitness or qualifications of any such applicant.
Delete this section.
REASONS: Redundant — Article III of new Rules covers this aspect of the admissions process.

Proposed Article III, Section 1:

Article IV, Section 21(a), (b) & (c) as it now appears:
Section 21. No applicant shall be admitted to the bar examination unless he or she furnishes to the Board:
(a) Satisfactory evidence that the applicant has received an academic Bachelor’s Degree granted on a basis of a four-year period of study in a college or university on the approved list of any one of the following regional accrediting associations or any Florida college or university approved by the Florida Supreme Court, approval to be withdrawn if accreditation is not met within a period approved by the accrediting agency:
(1) New England Association of Schools and Colleges;
(2) Middle States Association of Colleges and Schools/Commission on Higher Education;
(3) North Central Association of Colleges and Schools;
(4) Southern Association of Colleges and Schools — Commission on Colleges;
(5) Northwest Association of Schools and Colleges;
(6) Western Association of Schools and Colleges — Accrediting Commission for Senior Colleges;
at a time when, or in the same calendar year in which such school was so accredited; or the successful completion of an examination designated by the Board evidencing attained knowledge equivalent to 120 semester hours of college study to be administered under the Board’s supervision.
This section shall be applicable only to those applying for admission to the Bar who enrolled in any accredited law college subsequent to December 31, 1975. All other applicants shall be governed by previous requirements under Section 22(a) of Article IV, of the rules aforesaid. (At least two years’ in-residence undergraduate work if entry into law school were prior to December 31, 1960, or at *603 least three years’ in-residence undergraduate work if entry into law school were subsequent to December 31,1960, but pri- or to December 31,1975, or the successful completion of a college equivalency examination to be administered under the Board’s supervision.)
Graduation from any one of the following institutions: the United States Military Academy, the United States Naval Academy, the United States Air Force Academy, the United States Coast Guard Academy, or the United States Merchant Marine Academy, will fully satisfy the requirement of this section.
(b) Satisfactory evidence of graduation from a full-time accredited law school at a time when or within 12 months of such accreditation, or in the alternative, satisfactory evidence that, the applicant has completed the requirements for graduation from a full-time accredited law school at a time when, or in the same calendar year in which such school was so accredited, and that such accredited law school has or, in the alternative, will confer upon the applicant the degree of Bachelor of Laws or Doctor of Jurisprudence. In instances wherein the applicant has not completed law study prior to a filing deadline as specified in Rule I but anticipates such completion prior to the administration of the examination, such application will be accepted on or before the deadline but evidence that the applicant has completed the requirements for graduation and that' the degree will be conferred must be received at the office of the Florida Board of Bar Examiners at least seven days prior to the actual , administration of the examination into which admission is being sought. The term “accredited law school” has reference to any law school approved or provisionally approved by the American Bar Association or which is a member of the Association of American Law Schools. None of the following shall be substituted for law school training:
(1) Private study, correspondence school or law office training;
(2) Age or experience;
(3)Waived or lowered standards of legal training for particular persons or groups.
(Attorneys who were in good standing, upon producing such evidence as the Board may require, that such applicant was in the practice of law in the District of Columbia or in other states of the United States of America, or in practice in federal courts in territories, possessions or protectorates of the United States for at least ten years, and that he was in good standing at the bar of the District of Columbia, the territory, possession or protectorate, or of the state from which he came; may, notwithstanding the provisions of Sections 21(a) and 21(b) hereof, be permitted to take the bar examination to be admitted to the practice of law in Florida upon furnishing alternative data in compliance with the following Section. Such data must be filed with the Board at least 90 days prior to the administration of the examination, notwithstanding the provisions of Rule I, Section 4, and Rule II, Section 10.)
(c)(1) Similar requirements as to fitness except as required by Sections 21(a) and 21(b), as are required of other applicants to take the examinations; (2) such evidence as the Board may require that such applicant was in the practice of law in the District of Columbia or in other states of the United States of America, or in practice in federal courts in territories, possessions or protectorates of the United States for at least ten years, and that he was in good standing at the bar of the District of Columbia, the territory, possession or protectorate, or of the state from which he came; and (3) a representative compilation of the work product in the field of law showing the scope and character of the applicant’s previous experience and practice at the bar, including samples of the quality of the applicant’s work, such as pleadings, briefs, legal memoranda, corporate charters or other working papers which the applicant consider illustrative of his expertise, his academic and his legal training. Such *604 representative compilation of the work product shall confine itself to the applicant’s most recent ten years of practice and shall be filed at least 90 days prior to the administration of the examination, notwithstanding the provisions of Rule I, Section 4, and Rule II, Section 10. If a thorough consideration of such representative compilation of the work product shows that the applicant is a lawyer of high character and ability, that his professional conduct has been above reproach, and that his academic and legal scholarship conform to approved standards and sum up to the equivalent of that required of other applicants for admission to the examination, the Board may, in its discretion, admit him to the examination. In evaluating academic and legal scholarship the Board is clothed with a broad discretion.
Article III, Section 1 as it would appear:
ARTICLE III
EDUCATIONAL. CHARACTER AND FITNESS REQUIREMENTS OF APPLICANTS
A. EDUCATIONAL REQUIREMENTS
Section 211. No applicant shall be admitted to the Florida Bar Examination unless he or she furnishes to the Board:
(a) Satisfactory evidence that (1) the applicant has received an academic Bachelor’s Degree granted on a basis of a four-year period of study in a college or university on the approved list of any one of the following regional accrediting associations or any Florida college or university approved by the Florida Supreme Court of Florida: approval to-be withdrawn if accreditation is not met within a-per-iod approved by the accrediting agoncy.
(4)a. New England Association of Schools and Colleges;
(2) b. Middle States Association of Colleges and Schools/Commission on Higher Education;
(3) c. North Central Association of Colleges and Schools;
(4) d. Southern Association of Colleges and Schools — Commission on Colleges;
(5) e. Northwest Association of Schools and Colleges;
(6) f. Western Association of Schools and Colleges — Accrediting Commission for Senior Colleges.
at-a time-when, or The academic Bachelor’s degree referred to above must have been conferred at a time when such college or university was accredited or in the same calendar year in which such school- was so accredited; within 12 months of such accreditation.
(21 In the alternative, such applicant shall have successfully completed or the-successful completion of an examination designated by the Board evidencing attained knowledge equivalent to 120 semester hours of college study to be administered under the Board’s supervision; or
(31 a determination at the cost of the applicant by a credentials evaluation service or other professionals approved by the Board that the applicant’s education is the equivalent of a Bachelor’s Degree awarded by an accredited institution.
This section shall be applicable only to those applicants applying for admission to the Bar who enrolled in any accredited law college subsequent to December 31, 1975. All other applicants shall be governed by previous requirements under Section 22(a) of Article IV-of-the rules aforesaid. (Satisfactory evidence of at least two years’ in-residence undergraduate work if entry into law school were was prior to December 31, 1960, or at least three years’ in-residence undergraduate work if entry into law school were was subsequent to December 31, 1960, but prior to December 31, 1975, or the successful completion of a college equivalency examination to be administered under the Board’s supervision.)
Graduation from any one of the following institutions: the United States Military Academy, the United States Naval Academy, the United States Air Force Academy, the United States Coast Guard Academy, or the United States Merchant Marine Academy, will fully satisfy the requirement of this section.
*605 (b) Satisfactory evidence of graduation from a full-time accredited law school at a time when or within 12 months of such accreditation, or in the alternative, satisfactory evidence that the applicant has completed the requirements for graduation from a full-time accredited law school at a time when such law school was accredited or in the same calendar year in which such school was so accredited-,- within 12 months of such accreditation, and that such accredited law school has or, in the alternative, will confer upon the applicant the degree of Bachelor of Laws or Doctor of Jurisprudence. In instances wherein the-applicant has not completed-law study prior to a-filing-deadline as specified in Rule I-but anticipates such completion prior to-the administration of the examination, such application will be accepted on or before the deadline but evidence that-the applicant-has completed the requirements for graduation and-that- the degree will be-conferred must be received at the office of the Florida Board-ef- Bar Examiners at least seven days prior to ■ the actual administration of- -the examination into which admission is-being sought. The term “accredited law school” has reference to any law school approved, provisionally approved by the American Bar Association or which is a member of the Association of American Law Schools. None of the following shall be substituted for law school training:
(1) Private study, correspondence school or law office training;
(2) Age or experience;
(3) Waived or lowered standards of legal training for particular persons or groups.
(Attorneys who were in-good standing, upon producing such-evidence as the Board may require, that such applicant was in -the practice of law in the District of Columbia or in other states of the United States-of America, or in practice in federal courts in territories,- possessions or protectorates of the United States for at least ton years, and that he was in good standing at the bar of the-District of Columbia, the territory, possession-or-protecterate, or of the state from which he came — may, notwithstanding the provisions of Sections 21(a)~and 21(b) hereof, be permitted to take the bar examination to be admitted to the practice of law -in Florida-apon furnishing alternative data-in compliance — with—the following — section; Such data must be filed with the Board at least 90 days prior to the administration of the examination, notwithstanding the provisions of Rule I, Section 4 and Rule II, Section 10;
(c)(1) Similar-requirements as to fitness except as required by Sections 21(a) and 21(b), as are required of other applicants- to take the examination For those applicants not meeting the requirements of Article III. Section 1(a) or (bt the following requirements shall be met: (2) (1) such evidence as the Board may require that such applicant was engaged in the practice of law in the District of Columbia or in other states of the United States of America, or in practice in federal courts in territories, possessions or protectorates of the United States for at least ten years, and that he was in good standing at the bar of the District of Columbia, the territory, possession or protectorate, or of the state from which he came in which such applicant practiced: and (3) (21 a representative compilation of the work product in the field of law showing the scope and character of the applicant’s previous experience and practice at the bar, including samples of the quality of the applicant’s work, such as pleadings, briefs, legal memoranda, corporate charters or other working papers which the applicant considers illustrative of bis such applicant’s expertise, bis and academic and bis legal training. Such representative compilation of the work product shall confine itself to the applicant’s most recent ten years of practice and shall be filed at least 90 days prior to the administration of the Florida Bar Examination, notwithstanding the provisions of Rule I, Section 4, and Rule II, Section 10. Article VI. Section 5. If a thorough consideration of such representative compilation of the work product shows that the applicant is a lawyer of high character and ability, that his whose professional conduct has been above reproach, and that his *606 whose academic and legal scholarship conform to approved standards and sum up to the equivalent of that required of other applicants for admission to the Florida Bar Examination, the Board may, in its discretion, admit him such applicant to the General Bar Examination and accept score reports directed to the Board from the National Conference of Bar Examiners or its designee. In evaluating academic and legal scholarship the Board is clothed with a broad discretion.
REASONS: The portion deleted is due to the proposed Rules change (July 1980 Policy Session) not to require the Certificate of Dean prior to the administration of the examination but retains the requirement for admission to The Florida Bar.

Proposed Article III, Section 2:

Article IV, Section 19 and Article III, Section 18 as they now appear:
Section 19. No person shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for admission to The Florida Bar unless he first produces satisfactory evidence to the Board that he is of good moral character, that he has an adequate knowledge of the standards and ideals of the profession and is otherwise a fit person to take the oath and perform the obligations and responsibilities of an attorney.
Section 18. No person shall be recommended for admission to The Florida Bar who has not reached the age of eighteen years.
Proposed Article III, Section 2 as it would appear:
ARTICLE IV
B. EDUCATIONAL, CHARACTER AND FITNESS REQUIREMENTS
Section 49 2. No person shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for Admission to The Florida Bar unless he such person first produces satisfactory evidence to the Board that he is of good, moral character, that and he has an adequate knowledge of the standards and ideals of the profession and that such person is otherwise a fit person to take the oath and perform the obligations and responsibilities of an attorney. Section 18. An applicant may withdraw an application for admission to The Florida Bar at any time: provided however, in such event the Board may continue its investigative and adjudicatory functions to conclusion. No person shall be recommended for admission to The Florida Bar who has not reached the age of eighteen years.
REASONS: This Proposal gives the Board the authority to continue its proceedings to conclusion in cases where the Board has authorized the preparation and service of Specifications. Experience has shown that the applicants withdraw only to reapply at a later time when witnesses are no longer available or have forgotten the case.

Proposed Article III, Section 3:

Article II, Section 12 as it now appears:
Section 12. Prior to recommending an applicant for admission to practice the profession of law in Florida, the Florida Board of Bar Examiners shall conduct an investigation and otherwise inquire into and determine the character, fitness, and general qualifications of every applicant. In every such investigation and inquiry the Board may obtain such information as bears upon the character, fitness, and general qualifications of the applicant and take and hear testimony, administer oaths and affirmations, and compel, by subpoena, the attendance of witnesses and the production of books, papers and documents. Any member of the Board may administer such oaths and affirmations. Such investigations and inquiries shall be informal, but they shall be thorough, with the object of ascertaining the truth. Technical rules of evidence need not be observed. Any informal hearing for such purpose may be held by a division of the Board consisting of not less than three members of the Board, and either the Board Chairman, the Board Vice Chairman, or a member of the Board *607 appointed by the Board Chairman to preside shall serve as the division’s presiding officer, which presiding officer shall have power to issue subpoenas. Formal hearings held in response to Specifications shall be conducted before a quorum of the Board sitting en banc. Each division shall record its proceedings and shall report its decisions to the full Board.
Proposed Article III, Section 3 as it would appear:
Section 42 3(a). Prior to recommending an applicant for admission to practice the profession of law in Florida, the Florida Board of Bar Examiners shall conduct an investigation and otherwise inquire into and determine the character, fitness, and general qualifications of every applicant. In every such investigation and inquiry, the Board may obtain such information as bears upon the character, fitness, and general qualifications of the applicant and take and hear testimony, administer oaths and affirmations, and compel, by subpoena, the attendance of witnesses and the production of books, papers and documents. Any member of the Board may administer such oaths and affirmations. Such investigations and inquiries shall be informal, but they shall be thorough, with the object of ascertaining ■the truth. Technical rules of evidence need not be observed. Any informal investigative hearing for such purpose may be held by a division of the Board consisting of not less than three members of the Board, and either the Board Chairman, the Board Vice Chairman, or a member of the Board appointed by the Board Chair-man to preside shall serve as the division^ presiding officer, which presiding officer shall have power to issue subpoenas. Each division shall record its proceedings and shall report its decisions to the full Board. Formal hearings held in response to Specifications shall be conducted before a quorum of the Board sitting en banc which shall consist of not less than five members. Each division shall record its proceedings-and-shall report its decisions to the full Board.
(b) Following the conclusion of a formal hearing held in response to Specifications as provided in subsection (a), the Board shall make its findings of fact and recommendation for or against the admission of an applicant: provided however, if sufficient time has not passed since the occurrence of the behavior described in one or more of the Specifications sustained to permit the Board to determine whether the applicant has established his or her qualifications and what recommendation the Board would make to the Supreme Court of Florida, the Board mav defer entry of its recommendation to a month certain not in excess of one year after conclusion of the formal hearing. During the period of the deferral the Board mav continue its investigation or otherwise acquire such additional information as is needed to permit it to make its final determination. The applicant shall be notified promptly by the Board of its findings of fact and of the deferral of its final recommendation. which action shall be subject to review by the Court as specified under Article III. Section 4(b).
REASONS: Provides a quorum for Formal hearings and other matters requiring approval of the full Board. Changes names of first hearing (informal to investigative) to better define its function. Subsection B gives the Board the authority to defer final consideration in a case in which sufficient time has not passed since the occurrence of the cause of Specifications to permit the Board to evaluate the applicant’s claims for rehabilitation.

Proposed Article III, Section 4(a):

Rule VI, Section 70 as it now appears:
Section 70. If any applicant shall be dissatisfied with the Board’s recommendation about his character, fitness or general qualifications, such applicant may, within sixty (60) days after notice of the Board’s recommendation, file with the Board a petition for reconsideration with the fee of $50.00 as specified under the provisions of Rule V, Section 55(a). The petition must contain new and additional matter which the Board has not previously considered. Only one such petition for reconsideration may be filed.
*608 Proposed Article III, Section 4(a) as it would appear:
RULE-VI
RECONSIDERATIONS
Section 70 4(a) II Any applicant shall be who is dissatisfied with the Board’s recommendation about concerning his or her character, fitness or general qualifications, sueh applicant may, within sixty (60) days after notice of the Board’s recommendation, file with the Board a petition for reconsideration with the fee of $50.00 as specified under the provisions of Rule V, Section 55(a) Article V. Section 8. The petition must contain new and additional matter which the Board has not previously considered. Only one such petition for reconsideration may be filed.

Proposed Article III, Section 4(b):

Article IV, Section 20(a) as it now appears:
Section 20. (a) If any applicant or student registrant shall be dissatisfied with the Board’s recommendation concerning his character and fitness, upon the applicant’s or student registrant’s filing an appropriate petition with the Clerk of the Supreme Court of Florida, within a period of sixty (60) days after receipt of notice of denial, the Executive Director shall place the file and other available information with thé Supreme Court, and such Justice or Justices thereof as shall be designated by the Chief Justice may interview and hear such applicant or student registrant and make such inquiry of the Board and others as shall be necessary to a decision as to whether such applicant or student registrant meets the character and fitness requirements. The Justice or Justices so designated shall make a recommendation to the Court and the final action of the Court shall be duly entered in the minutes thereof.
Proposed Article III, Section 4(b) as it would appear:
Section 20(a) (b) If Any applicant or student registrant shall be who is dissatisfied with the Board’s recommendation concerning his such applicant’s or registrant’s character and fitness, upon the applicant’s or student registrant’s--filing may file an appropriate petition with the Clerk of the Supreme Court of Florida, within a period of sixty (60) days after receipt of notice of denial-, the Board’s recommendation. A copy of such petition shall be served upon the Executive Director of the Board. Upon receipt of such petition the Executive Director shall place the file and other available information with the Supreme Court, and such Justice or Justices thereof as shall be designated by the Chief Justice may interview and hear such applicant or student registrant and make such inquiry of the Board and others as shall be necessary to a decision as to whether such applicant or student registrant meets the character and fitness requirements. The Justice or Justices so designated shall make a recommendation to the Court and the final action of the Court shall be duly entered in the minutes thereof.
REASONS: Additional provision requires the applicant to notify the Board of his petition to the Supreme Court.

Proposed Article III, Section 4(c):

Article IV, Section 20(c) as it now appears:
(c) Any applicant who has been refused recommendation by the Board or any applicant or student registrant who has proceeded through the provisions of paragraph (a) above and is the recipient of final action by the Supreme Court either denying an applicant’s admission or finding a student registrant to be unfit for admission may, within a period of not less than two calendar years from the date the Board delivered its adverse finding or from the date the Court entered such final action, whichever is later, file an appropriate petition with the Clerk of the Supreme Court of Florida in an attempt to show sufficient rehabilitation to warrant a review of the Board’s finding or the re-evaluation by the Court of its final action. The Court shall fix all investigation costs to be borne by the petitioner and remitted to the Florida Board of Bar *609 Examiners, which Board shall serve as the Court’s investigative arm in such matters. In issuing a judgment adverse to an applicant or student registrant, the Court shall fix the date after which subsequent petitions may be filed with the Court.
Proposed Article III, Section 4(c) as it would appear:
(c) Any applicant who has been refused recommendation by the Board or any applicant or student registrant who has proceeded through the provisions of paragraph subsection (a) (b) above and is the recipient of final action by the Supreme Court of Florida either denying an applicant’s admission or finding a student registrant to be unfit for admission may, within a period of not less than two calendar years from the date the Board delivered its adverse finding or from the date the Court entered such final action, whichever is later, file an appropriate petition with the Clerk of the Supreme Court of Florida in an attempt to show sufficient rehabilitation to warrant a review of the Board’s finding or the re-evaluation by the Court of its final action. The Court shall fix all investigative costs to be borne by the petitioner and remitted to the Florida Board of Bar Examiners, which Board shall serve as the Court’s investigative arm in such matters. In issuing a judgment adverse to an applicant or student registrant, the Court shall fix the date after which subsequent petitions may be filed with the Court.

Proposed Article IV, Section 1:

Rule I, Section 1(a) and (b) as it now appears:
RULE I
APPLICATIONS
Section 1. Applications shall consist of:
(a) An Application for Admission into the Florida Bar Examination and;
(b) Application for Admission to the Florida Bar. The Application for Admission to The Florida Bar must be filed not later than 180 days from the date of the notice that success has been attained on all three parts of the examination as is provided under Article II, Section 10(f).
Applications for admission into Part I and Part III of the Florida Bar Examination, Part II if the applicant anticipates submission to Part II within the State of Florida, and applications for admission into The Florida Bar shall be made upon forms supplied by the Board pursuant to Rule V, Section 62.
Proposed Article IV, Section 1 as it would appear:
RULE-4 ARTICLE IV
APPLICATIONS
Section 1. Applications shall consist of:
(a) An Application for Admission into the F-lor-ida General Bar Examination (Form 1-A1 and;
(b) Application for Admission to The Florida Bar (Form 1 or Form 2. as applicable-).
Although the application for admission into the General Bar Examination and the application for admission to The Florida Bar are entirely independent of each other, applicants are advised that the character and fitness investigation conducted by the Board in conjunction with the Application for Admission to The Florida Bar is detailed and may require 6-8 months for all facts to be marshalled and a decision reached by the Board. Therefore laW students are encouraged to file for admission to the Bar when entering their senior year in law school to assure completion of all character and fitness related matters at the time of grade release of the first examination following graduation. All applicants are urged to file fully completed questionnaires and to be responsive to Board requests for further information in order to assure orderly processing of the files.
Applications for admission into Part I -and Part III of the Florida Bar Examination; Part II General Bar Examination if the applicant anticipates submission to Part I within the State.of Florida, and applica *610 tions for admission into to The Florida Bar shall be made upon forms supplied by the Board pursuant to Rule Article V, Section 62 16. Those applicants utilizing Part B (Multistate Bar Examination — MBE) scores from other jurisdictions must have filed with that jurisdiction as an applicant for that bar prior to the administration of said MBE.
The Application for Admission to The Florida Bar must be filed not later than 180 days from the date of the notice that success has been attained on all three parts of the Florida Bar Examination (General Bar Examination and Multistate Professional Responsibility Examination — MPRE) as is provided under Article B VI, Section 40(f) 9(b).
Note. Applications for the Multistate Professional Responsibility Examination (MPRE) are filed with the appropriate agency of the National Conference of Bar Examiners. Fees required for that administration shall be paid to the agency administering that examination.
REASONS: With reduction to two General Bar Examinations the Board anticipates the flow of applications will recant to the pre-Sequential Admission time frame which will result in processing peaks which were smoothed under the current Rules. This provision is designed to offset that problem.

Proposed Article IV, Section 2:

Rule I, Section 2 as it now appears:
Section 2. Applicants who have not been admitted to the.Bar in any other jurisdiction for a period in excess of twelve months preceding the filing of an Application for Admission to The Florida Bar, time spent in military service of the United States not to be reckoned as part of said twelve months, shall accompany the application with a fee of $120.00, as specified under Rule V, Section 50, and such other fee as may be required under Rule IV.
Proposed Article IV, Section 2 as it would appear:
Section 2. Applicants for admission into the General Bar Examination and applicants for admission into The Florida Bar who have not been admitted to the Bar in any other jurisdiction for a period in excess of twelve months preceding the filing of an Application for Admission to The Florida Bar (time spent in military service of the United States not to be reckoned as part of said twelve months) shall accompany the initial application with a fee of $120.00, as specified under Rule Article V, Section 50 1, and such other fee as may be required under Rule IV Article II.

Proposed Article IV, Section 3:

Rule I, Section 3 as it now appears:
Section 3. All applicants except those described in Section 2 shall accompany the application with a fee of $500.00, as specified under Rule V, Section 51.
Proposed Article IV, Section 3 as it would appear:
Section 3. All applicants for admission into the General Bar Examination and applicants for admission into The Florida Bar except those described in Article IV. Section 2 shall accompany the initial application with a fee of $500.00, as specified under Rule Article V, Section 54 2.

Proposed Article IV, Section 4(a):

Rule II, Section 10(a) as it now appears:
Section 10. (a) The required fees must be paid at the time an Application for Admission into the Florida Bar Examination is filed. Each such application, as an integral part thereof, must be accompanied by the following:
(1) A photograph, 2V2" X 2W, made within six months prior to the filing of the application;
(2) Two (2) complete sets of fingerprints taken and certified by an authorized law enforcement officer;
(3) Such supporting documents or additional information as may be required in the forms supplied by the Board.
Proposed Article IV, Section 4(a) as it would appear:
RULE II
APPLICANTS
Section 40 4. (a) The required fees must be paid at the time an Application for Ad *611 mission into the Florida General Bar Examination is filed. Each such application, as an integral part thereof, must be accompanied by the following:
(1) A photograph, 2lh" X 2lh", made within six months prior to the filing of the application;
(2) Two (2) complete sets of fingerprints taken and certified by an authorized law enforcement officer;
(3) Such supporting documents or additional information as may be required in on the forms supplied by the Board.

Proposed Article IV, Section 4(b):

Rule II, Section 10(b) as it now appears:
(b) The following documents are also required but may be received subsequent to the filing deadline specified under Rule I, Section 4:
(1) A Certificate of Dean, Florida Board of Bar. Examiners Form No. 3, certifying the applicant’s graduation from a full-time accredited law school or certifying that the applicant has completed the requirements for graduation from a full-time accredited law school and that the first degree in law will be conferred [except as is provided under the provisions of Article IV, Section 21(c)] which certificate must be received by the Board at least 7 days prior to the actual administration of the examination into which admission is being sought;
(2) An official transcript of academic credit certifying that the applicant has received an academic Bachelor’s Degree granted on the basis as specified under Article IV, Section 21(a), of the Rules of the Supreme Court of Florida Relating to Admissions to the Bar, which transcript must come directly from the awarding institution. The transcript or such other documentation for which provision is made in the Rules may be received subsequent to the filing of the application for admission into the bar examination.
Proposed Article IV, Section 4(b) as it would appear:
(b) Except for applicants who qualify for admission into the General Bar Examination under the provisions of Article III. Section 1(c) the following documents are also required but may be received subsequent to the filing deadline specified under Rule I, Section 4 and should be filed with the Application for Admission to The Florida Bar if possible, but shall be filed not later than 180 days from the date of notice that success has been attained on the Florida Bar Examination:
(1) A Certificate of Dean Florida Board of Bar Examiners (Form No. 3) certifying the applicant’s graduation from a full-time accredited law school, or certifying that the applicant has completed the requirements- for- graduation from- a full-time accredited law school and that the first degree in law will-be-conferred except as is provided under the provisions of Article IV, Section 21(e) Article III. Section 1(c) which certificate must be received by the Board at least -7 days-prior to the actual administration of the-e-xami-nation into which — admission is being sought.
(2) An official transcript of academic credit certifying that the applicant has received an academic Bachelor’s Degree granted on the basis as specified under Article IV ID, Section 21(a) 1(a) of the Rules of the-Supreme Court of Florida Relating to Admissions to the Bar, which transcript must come directly from the awarding institution. The- transcript-or such other documentation for which provision is -made-in the Rules may be-re-ccived subsequent to the filing of the application for admission into-the-bar examination;
REASONS: Delete the Dean Certificate (Form 3) as a requirement for admission to the examination but retain the form as a separate certificate re character evaluation by the Dean. This combines two forms for the out-of-state and continues Florida law schools’ certificates without exam deadlines interfering with examination ticket delivery to the applicants in a timely manner.

*612
Proposed Article IV, Section 4(c):

Rule II, Section 10(c) as it now appears:
(c) Except as provided in Section 11, an Application for Admission to The Florida Bar, which must be filed not later than 180 days from the date of the notice from the Board that success has been attained on all three parts of the examination, must be accompanied by the following which will be deemed a part of it:
(1) If the applicant is not a natural born citizen of the United States and indicates a name change at the time of naturalization, evidence of naturalization satisfactory to the Board that such name change occurred.
(2) If the applicant has been admitted to the practice of law in one or more jurisdictions, evidence satisfactory to the Board that the applicant is of good standing in such jurisdictions and a copy of the application for admission filed in each such jurisdiction.
(3) An authorization and release on a form supplied by the Board requesting and directing the inspection and furnishing to the Board, or any of its authorized representatives, of all relevant documents, records or other information pertaining to the applicant and releasing any person, firm, officer, corporation, association, organization or institution from any and all liability in respect to such inspection or the furnishing of any such information.
(4) Supporting documents and other information as may be required in the forms supplied by the Board and such other documents as the Board may, in addition, from time to time reasonably require.
(5) In instances wherein the applicant elects to demonstrate compliance with the requirements of Part II through submission to Part II in an admitting jurisdiction other than the State of Florida, a certificate bearing the score attained in that jurisdiction forwarded directly to the Florida Board of Bar Examiners by the administering jurisdiction on a form for such certification supplied by the Florida Board of Bar Examiners (Form 32).
Proposed Article IV, Section 4(c) as it would appear:
(c) Except as-provided in Section 11, An Application for Admission to The Florida Bar, which must be filed not later than 180 days from the date of the notice from the Board that success has been attained on all three parts of the Florida Bar Examination, must be accompanied by the following which will be deemed a part of it:
(1) If the applicant is not a natural born citizen of the United States and indicates a name change at the time of naturalization, evidence of naturalization satisfactory to the Board that such name change occurred.
(2) If applicant has been admitted to the practice of law in one or more jurisdictions, evidence satisfactory to the Board that the applicant is of good standing in such jurisdictions and a copy of the application for admission filed in each such jurisdiction.
(3) An authorization and release on a form supplied by the Board requesting and directing the inspection and furnishing to the Board, or any of its authorized representatives, all relevant documents, records or other information pertaining to the applicant and releasing any person, firm, officer, corporation, association, organization or institution from any and all liability in respect to such inspection or the furnishing of any such information.
(4) Supporting documents and other information as may be required in the forms supplied by the Board and such other documents as the Board may, in addition, from time to time reasonably require.
(5) In instances wherein the applicant elects to demonstrate compliance with the requirements of Part IÍ B of the General Bar Examination through submission to Part II the Multistate Bar Examination (MBE) in an admitting jurisdiction other than the State *613 of Florida, a certificate bearing the score attained in that jurisdiction forwarded directly to the Florida Board of Bar Examiners by the administering jurisdiction on a form for such certification supplied by the Florida Board of Bar Examiners (Form 32).
(6) Each applicant must demonstrate compliance with the requirements of successful completion of the Multis-tate Professional Responsibility Examination (MPRE) bv causing a certificate supplied bv the agency administering such examination bearing the score attained on the Multistate Professional Responsibility Examination (MPRE) to be forwarded directly to the Florida Board of Bar Examiners bv the designee of the National Conference of Bar Examiners.

Proposed Article IV, Section 5:

Rule I, Section 5(a) and (b) as it now appears:
Section 5. Applicants seeking postponement of their submission to the bar examination shall be permitted to do so upon payment of
(a) a fee of $20.00, as specified under Rule V, Section 57(a), if a written notice of postponement is received at least seven
(7) days in advance of the commencement of the administration of the examination; or
(b) A fee of $30.00, as specified under Rule V, Section 57(b), if a written notice of postponement is received thereafter but preceding the deadline for filing for the next administration of the examination.
All such applicants must bring their applications to current status by the filing of another Application for Admission into the Florida Bar Examination by the deadline as specified under the provisions of Section 4 of this Rule.
Proposed Article IV, Section 5 as it would appear:
Section 5. Applicants seeking postponement of their submission to Part A of the General Bar Examination or Part B thereof if administered in Florida shall be permitted to do so upon payment of
(a) a fee of $20.00, as specified under Rule Article V, Section 57(a) 11(a). if a written notice of postponement is received at least seven (7) days in advance of the commencement of the administration of the such examination; or
(b) a fee of $30.00, as specified under Rule Article V, Section 57(b) 11(b). if a written notice of postponement is received thereafter but preceding the deadline for filing for the next administration of the such examination.
All such applicants who have previously postponed their submission to Part A of the General Bar Examination or Part B thereof if administered in Florida must bring their applications to current status by the filing of another examination application fer Admission into the Florida Bar Examination by the deadline as specified under the provisions of Section- 4 Article VI. Section 5. of this Rule.

Proposed Article IV, Section 6:

Rule II, Section 11(a) as it now appears:
Section 11. (a) If the applicant has filed an Applicant’s Questionnaire and Affidavit as a registrant as required by Rule IV, Section 30, the provisions of Rule II, Section 10 shall be inapplicable but in such case the applicant shall, not later than 180 days from the date of notice that success has been attained on all three parts of the examination, file a supplement to said questionnaire and affidavit upon forms supplied by the Board, and upon the filing of such supplement, the said questionnaire and affidavit filed as a registrant and all documents, records, information, and every other portion of the file shall be deemed converted into and shall thereupon be an application for admission to The Florida Bar. The Board may require the applicant to furnish such additional or supplemental information as the Board deems reasonable and necessary in the consideration of the application for admission to The Florida Bar.
*614 Proposed Article IV, Section 6 as it would appear:
Section 44. 6 (a). If the applicant has filed an Applicant’s Questionnaire and Affidavit as a registrant as required by Rule IV, Section 30, Article II. Section 1. the provisions of Rule-I-Iy-Section-10 Article IV. Section 4 shall be inapplicable but in such case the applicant shall, not later than 180 days from the date of notice that success has been attained on all throe parts of the Florida Bar Examination, file a supplement to said questionnaire and affidavit upon forms supplied by the Board, and upon the filing of such supplement, the said questionnaire and affidavit filed as a registrant and all documents, records, information, and every other portion of the file shall be deemed converted into and shall thereupon be an application for admission to The Florida Bar. The Board may require the applicant to furnish such additional or supplemental information as the Board deems reasonable and necessary in the consideration of the application for admission to The Florida Bar.

Proposed Article IV, Section 7:

Rule II, Section 11(b) as it now appears:
(b) Even though an applicant has filed an Applicant’s Questionnaire and Affidavit as a registrant as specified under Rule IV, the separate Application for Admission into the Florida Bar Examination must be filed by the deadlines as specified under the provisions of Rule I and in compliance with the provisions of Rule II, Section 10 except that compliance with subsections (a)(1) and (2) and (b)(2) may be omitted if there has been previous compliance.
Proposed Article IV, Section 7 as it would appear:
(b) Section 7. Even though an applicant has filed an Applicant’s Questionnaire and Affidavit as a registrant as specified under Rule IV, Article II. the separate Application for Admission into the Florida General Bar Examination must be filed by the deadlines as specified under the provisions of Rule I Article VI. Section 5 and in compliance with the provisions of Rule II, Section 10 Article IV. Section 4 except that compliance with subsections (a)(1) and (2) and (b)(2) may be omitted if there has been previous compliance.

Proposed Article IV, Section 8:

Rule I, Section 6(a), (b) and (c) as it now appears:
Section 6. (a) Applications for admission to The Florida Bar whether filed as a registrant under Rule IV or as an applicant under this Rule are continuing in nature and must give correctly and fully the information therein sought as of the date that the applicant is sworn in as a member of The Bar of Florida. The Board may require that all information furnished to it be given under oath.
(b) Every applicant or registrant shall immediately inform the Board of any change or discovered error in information previously furnished to the Board.
(c) As a condition for admission into the bar examination, every applicant shall state under oath when filing an Application for Admission into the Florida Bar Examination that all information in every application and amendments thereto previously submitted is true and complete.
Proposed Article IV, Section 8 as it would appear:
Section 6 8. (a) Applications for admission to The Florida Bar whether filed as a registrant under Rule IV Article II or as an applicant under this Rule Article are continuing in nature and must give correctly and fully the information therein sought as of the date that the applicant is sworn in as a member of The Bar of Florida Bar. The Board may require that all information furnished to it be given under oath.
(b) Every applicant or registrant shall immediately inform the Board of any change or discovered error in information previously furnished to the Board.
(c) Every applicant shall state under oath when filing an Application for Admission into the Florida General Bar Examination that all information in every application and amendments thereto previously submitted is true and complete.

*615
Proposed Article IV, Section 9:

Article II, Section 11 as it now appears:
Section 11. The Board shall make public the topics upon which applicants will be examined and also make such suggestions for the information and guidance of students as will tend to promote their studies.
Proposed Article IV, Section 9 as it would appear:
Section 419. The Board shall make public the topics upon which applicants will be examined and also made such suggestions for the information and guidance of students as will tend to promote their studies.

Proposed Article IV, Section 10:

Article IY, Section 20(b) as it now appears:
(b) If any applicant or student registrant shall be dissatisfied with an administrative ruling of the Board not covered by subparagraph (a) above, such applicant or student registrant may, within five (5) days after receipt of written notice of the Board’s action, file an appropriate petition with the Clerk of the Supreme Court of Florida for review of the Board’s action. A copy of any such petition shall be served upon the Executive Director of the Board. The Board shall have twelve (12) days after the service of said copy on the Executive Director in which to file a response to the petition with the Clerk of the Supreme Court of Florida and shall serve a copy thereof upon the applicant or student registrant. Service of a petition or response may be in person, by certified mail, or by registered mail. Thereafter, the matter shall be disposed of as the Court directs and any final action of the Court shall be duly entered in the minutes thereof.
Proposed Article IV, Section 10 as it would appear:
(b) Section 10. If any applicant or student registrant shall be dissatisfied with an administrative ruling of the Board not covered by subparagraph Article III. Section 4. such applicant or student registrant may within five (5) ten (10) days after receipt of written notice of the Board’s action, file an appropriate petition with the Clerk of the Supreme Court of Florida for review of the Board’s action. A copy of any such petition shall be served upon the Executive Director of the Board. The Board shall have twelve (42) fifteen (15) days after the service of said copy on the Executive Director in which to file a response to the petition with the Clerk of the Supreme Court of Florida and shall serve a copy thereof upon the applicant or student registrant. Service of a petition or response may be in person, by certified mail, or by registered mail. Thereafter, the matter should be disposed of as the Court directs and any final action of the Court shall be duly entered in the minutes thereof.
REASONS: Increase period within which petition and response may be filed with the Supreme Court.

Proposed Article V

Rule V as it now appears:
RULE V
SCHEDULE OF FEES
The following fees shall be paid by the applicant. No fees shall be refunded, except that the Board may, in its discretion and upon request, refund all or a portion of the fees of an applicant who dies before taking the oath of admission.
Section 50. The application of applicants described in Section 2 shall be accompanied by a fee of. $120.00.
Section 51. The application of applicants described in Section 3 shall be accompanied by a fee of. $500.00.
Section 52. The Applicant’s Questionnaire and Affidavit as a registrant as required by Section 30 shall be accompanied by a fee of $ 40.00.
Section 53. (a) The application filed late as provided in Section 31(a) shall be accompanied by a fee of..•. $ 50.00.
(b) The application filed late as provided in Section 31(b) shall be accompanied by a. fee of. $ 75.00.
(c) The application filed late as provided in Section 31(c) shall be accompanied by a fee of. $100.00.
Section 54. For the investigation and inquiry provided in Section 32, the registrant shall pay a fee of. $ 50.00.
Section 55. (a) A petition for reconsideration as provided under the provision of Rule *616 VI, Section 70, shall be accompanied by a fee of. $ 50.00.
(b) A petition for reconsideration of a ruling by the Board involving the suspension or waiver of any rule or regulation or an order issued by the Board relating to matters other than a registrant’s or applicant’s character, fitness or general qualifications, shall be accompanied by a fee of . $ 10.00.
The petition must refer only to an administrative ruling by the Board and contain new and additional matter which the Board has not previously considered.
Section 56. For each examination administration entered after the first which must be paid by the deadlines prescribed in Rule I, a fee of . $ 75.00.
The term “administration” refers to any one of the four annual presentations specified under Rule 1, Section 4, two of which are of two days duration and two of which are of one day duration. The second quarterly presentation entered, whether to repeat a part or parts of the examination or attempt a part or parts of the examination for the first time, requires payment of this fee.
Section 57. Fees for postponement of admission to the examination as provided under Rule I, Section 5, herein shall be:
(1) As provided by Rule I, Section 5(a) .. $ 20.00.
(2) As provided by Rule I, Section 5(b) .. $ 30.00.
Section 58. Petitions or requests relating to or involving a suspension or waiver of any rule, regulation or order shall be accompanied by a fee of. $ 15.00.
Section 59. The cost of a transcript or any record or document reasonably required by the Board in the conduct of an investigation or inquiry into the character and fitness of an applicant or a registrant shall be paid by such applicant or registrant.
Section 60. Upon a showing of need therefor by the Bo.ard, the Court may order any applicant or registrant to pay over to the Board additional sums necessary in the conduct of any inquiry and investigation into the character and fitness and general qualifications of such applicant or registrant.
Section 61. Each request for a copy of any document or portion thereof filed by an applicant in the course of his seeking admission to the Florida Bar Examination or The Florida Bar or for any certificate of the Board shall be accompanied by a fee of $5.00 for the first page and $.25 for each additional page.
Section 62. Requests for copies of the application forms for admission to the Florida Bar Examination, for admission to The Florida Bar or both filed by persons other than students matriculating at the law schools within the State of Florida, the deans and librarians of such Florida law schools, and any other persons to be designated by the Board, shall be accompanied by a fee of $10.00. Any person having paid this fee shall have a like amount deducted from any application fee which is paid within one year from the receipted date of the payment of this fee.
Section 63. The Board shall honor requests received in writing for copies of the essay-type questions which appeared on a previously-administered Florida Bar Examination. Each such request shall be accompanied by a fee of. $ 5.00.
Section 64. Each request for a copy of any applicant’s answers to essay-type questions from a single examination shall be accompanied by a fee of. $ 20.00.
Section 65. The examinees using a typewriter to complete answers to the essay portions of the examination shall pay a fee of .. $ 10.00.
Article V as it would appear:
RUBE ARTICLE V
SCHEDULE OF FEES
The following fees shall be paid by the applicant. No fees shall be refunded, except that the Board may, in its discretion and upon request, refund all or a portion of the fees of an applicant who dies before taking the oath of admission.
Section 50 1. The application of applicants described in Article IV, Section 2, shall be accompanied by a fee of_ $120.00
Section 51 2. The application of applicants described in Article IV, Section 3, shall be accompanied by a fee of_ $500.00
Section 52 3. The Applicant’s Questionnaire and Affidavit filed as a registrant as required by Article II, Section 30 1, shall be accompanied by a fee of_ $ 40.00
*617 Section 53 4.(a) The application filed late as provided in Article II, Section 31(a) 2, shall be accompanied by a fee of_ $ 50.00
Section 5.(b) The application filed late as provided in Article II, Section 31(b) 3, shall be accompanied by a fee of- $ 75.00
Section 6.(e) The application filed late as provided in Article II, Section 31(o) 4, shall be accompanied by a fee of_ $100.00
Section 54 7. For the investigation and inquiry provided in Article II, Section 33 B, the registrant shall pay a fee of_ $ 50.00
Section 55 S.(a) A petition for reconsideration as provided under the provision of Rule ¥4; Article III, Section TO 4(a), shall be accompanied by a fee of_ $ 50.00
Section 9.(b) A petition for reconsideration of a ruling by the Board involving the suspension or waiver of any rule or regulation or an order issued by the Board relating to matters other than a registrant’s or applicant’s character, fitness or general qualifications, shall be accompanied by a fee of_ $ 10.00
The petition must refer only to an administrative ruling by the Board and contain new and additional matter which the Board has not previously considered.
Section 56 10. For each examination administration entered after the first which must be paid by the deadlines prescribed in Article VI,
RaJe4, Section 5, a fee of _ $ 50.00
The term “administration” refers to any one of the fern? two annual presentations specified under Article VI, Rule-L Section 4, two of which-are of two days duration and two of which arc of one day duration. The second quarterly presentation entered, whether to repeat a part or parts of the examination or attempt a part or parts of the examination for the first time, requires payment of this fee.
Section 57 11. Fees for postponement of admission to the General Bar Examination as provided under Article IV. Rule I, Section 5, herein shall be:
(4 a) As provided by Article IV, Rule I, Section 5(a) _ $ 20.00
(3 b) As provided by Article IV, Rulo I, Section 5(b) _•_ $ 30.00
Section 58 12. Petitions or requests relating to or involving a suspension or waiver of any rule, regulation or order shall be accompanied by a fee of — $15.00.
Section 50 13. The cost of a transcript or any record or document reasonably required by the Board in the conduct or an investigation or inquiry into the character and fitness of an applicant or a registrant shall be paid by such applicant or registrant.
Section 60 14- Upon a showing of need therefor by the Board, the Court may order any applicant or registrant to pay over to the Board additional sums necessary in the conduct of any inquiry and investigation into the character and fitness and general qualifications of such applicant or registrant.
Section 64 15. Each request for a copy of any document or portion thereof filed by an applicant in the course of his such applicant’s seeking admission to the General Florida Bar Examination or The Florida Bar or for any certificate of the Board shall be accompanied by a fee of $5.00 for the first page and $.25 for each additional page.
Section 62 16. Requests for copies of the application forms for admission to the General Florida Bar Examination and for admission to The Florida Bar or-both filed by persons other than students matriculating at the law schools within the State of Florida, the deans and librarians of such Florida law schools, and any other persons to be designated by the Board, shall be accompanied by a fee of $10.00. Any person having paid this fee shall have a like amount deducted from any application fee which is paid within one year from the receipted date of the payment of this fee.
Section 66 17. The Board shall honor requests received in writing for copies of the essay-type questions which appeared on a previously administered General Florida Bar Examination. Each such request shall be accompanied by a fee of__ $ 5.00
Section 64 18. Each request from an applicant for a copy of a*y such applicant’s answers to essay-type questions from a single General Bar Examination shall be accompanied by a fee of____$ 20.00
Section 65 19. The examinees using a typewriter to complete answers to the essay portions of the General Bar Examination shall pay a fee of_ $ 10.00
REASONS: Incorporate rule change by the Supreme Court re fee for Section 10 implemented after October 1979 Florida Bar Examination.

*618
Proposed Article VI, Section 1

Rule III, Section 20(a) as it now appears:
Section 20. (a) The bar examination shall test the applicant’s ability to reason logically, to analyze accurately the problem presented to him, and to demonstrate a thorough knowledge of the fundamental principles of law and their application. The examination shall not be designed primarily for the purpose of testing information, memory or experience.
Proposed Article VI, Section 1 as it would appear:
RULE IH ARTICLE VI
EXAMINATIONS
Section 1. The Florida Bar Examination shall consist of a General Bar Examination and the Multistate Professional Responsibility Examination (MPRE1.
Section 20 (a) The General Bar Examination will consist of two parts (A and B). Part A will consist of a combination of essay and multiple-choice questions and Part B will consist of the Multistate Bar Examination (MBEl The General Bar Examination shall test the applicants’ ability to reason logically, to analyze accurately the problem presented, to him and to demonstrate a thorough knowledge of the fundamental principles of law and their application. The examination shall-not be designed- primarily for the purpose-of- testing information, memory or experience, (b) The purpose of the Multistate Professional Responsibility Examination 1MPRE) is to measure the applicants’ knowledge of the ethical standards of the legal profession.
REASONS: Better define the parts of the examination and the fact that there are differing goals set for measurement by the General Bar Examination and the Professional Responsibility portion.

Proposed Article VI, Section 2

Rule III, Section 20(b) as it now appears:
(b) A portion of the bar examination may consist of questions in the form of hypothetical fact problems requiring essay answers. Questions may be designed to require answers based upon Florida case or statutory law of substantial importance. Essay questions shall not be labeled as to subject matter.
Article VI, Section 2 as it would appear:
(b) 2. A portion of the General Bar Examination shall consist of questions in the form of hypothetical fact problems requiring essay answers. Questions may be designed to require answers based upon Florida case or statutory law of substantial importance. Essay questions may not be labeled as to subject matter.

Proposed Article VI, Section 3(a)

Article II, Section 10(a) and it now appears:
Section 10. (a) The Board shall be responsible for the preparation, grading and conducting of written examinations, and members thereof shall be willing and available to discuss general problems of purposes, policies and procedures of the examination with applicants; and such written examinations shall be held in such places and at such times in the State as the Board may from time to time direct, and the Board shall recommend qualified applicants to the Court for admission to The Florida Bar.
Article VI, Section 3(a) as it would appear:
Section 3 40. (a) The Board shall be responsible for the preparation, grading and conducting of written examinations, and members thereof shall be willing and available to discuss with applicants general problems of regarding the purposes, policies and procedures of the examination, with-applicants; and such The written examinations shall be held in such places in the state and at-such times -in-the State as the Board may from time to time direct,, and the Board shall-recommend qualified applicants to tho Gourt for-admission to The Florida Bar.
REASONS: The deleted words are covered elsewhere and are out of place here.

Proposed Article VI, Section 3(b)

Article II, Section 10(b) as it now appears:
(b) The Board may utilize the services of expert draftsmen to prepare bar exam *619 ination questions, either by arranging for the drafting services of qualified persons, including out-of-state law teachers, or by using the services of the National Conference of Bar Examiners or other national agency. Before an essay question is accepted for use in a bar examination, whether drafted by the examiners or by expert draftsmen, every point of law in the question is to be thoroughly briefed and the question is to be analyzed and approved by the members of the Board. Every machine-scored item of Part I and Part III as herein defined must specify authority for the best response, and every such item and authority should be analyzed and approved by the members of the Board preceding inclusion of the item on the bar examination.
Proposed Article VI, Section 3(b) as it would appear:
(b) The Board may utilize the services of expert draftsmen to prepare bar examination questions, either by arranging for the drafting services of qualified persons, including out-of-state law teachers, or by using the services of the National Conference of Bar Examiners or other national agency. Before an essay question is accepted for use in a on the General Bar Examination, whether drafted by the examiners or by expert draftsmen, every point of law in the question is-to shall be thoroughly briefed and the question is-te shall be analyzed and approved by the members- of -the Board. Every machine-scored item of Part I-and Part III A as herein defined must specify authority for the best response, and every such item and authority should be analyzed and approved by the members of the Board preceding inclusion of the item on the General Bar Examination.

Proposed Article VI, Section 3(c)

Article II, Section 10(c) as it now appears:
(c) Each examination shall consist of three parts to be designated Part I, Part II and Part III. Part I shall be of six hours’ duration and shall be composed of six one-hour segments to be promulgated by the Florida Board of Bar . Examiners.
One segment shall embrace the subject of Florida Civil and Criminal Rules and Procedure, another shall embrace the subject of Florida Constitutional Law and the remaining four segments shall be selected from the subjects:
Federal Constitutional Law
Business Entities Including Corporations and Partnerships
Wills and Administration of Estates Trusts
Real Property
Evidence
Torts
Part II of the examination shall be that examination offered to the several states by the National Conference of Bar Examiners and designated by that organization as the Multistate Bar Examination (MBE).
Part III of the examination shall be of one hour’s duration and shall consist of not more than forty multiple-choice questions. These questions shall be designed to permit the applicant to demonstrate knowledge of the Code of Judicial Conduct and the Code of Professional Responsibility, including the Canons, Disciplinary Rules and Ethical Considerations as applicable in the State of Florida. Part III of the examination shall be clearly labeled as to subject matter.
Proposed Article VI, Section 3(c) as it would appear:
(c) Each — examination shall — consist—of three parts to be designated- Part I, Part II aná-Part I-ÍÍ-. The Florida Bar Examination shall consist of a General Bar Examination and the Multistate Professional Responsibility Examination (MPRE).
The General Bar Examination shall be designated as Part A and Part B.
Part Í A shall be of six hours’ duration and shall be composed of six one-hour segments to be promulgated by the Florida Board of Bar Examiners.
One segment shall embrace the subject of Florida Rules of Civil and Criminal Rules and Procedure, another shall embrace the subject of Florida Constitutional Law and *620 the remaining four segments shall be selected from the following subjects:
Federal Constitutional Law
Business Entities Including Corporations and Partnerships
Wills and Administration of Estates Trusts
Real Property
Evidence
Torts
Part II B of -the examination shall fee consist of the Multistate Bar Examination (MBE) which is that examination offered to the several- states by the National Conference of Bar Examiners and designated by that organization as the Multistate Bar Examination (MBE).
DELETE LAST PARAGRAPH AND SUBSTITUTE:
The Multistate Professional Responsibility Examination (MPRE) shall be the examination offered to the several states bv the National Conference of Bar Examiners designated bv that organization as the Multis-tate Professional Responsibility Examination (MPRE). which examination is administered generally three times each year throughout the country at various colleges and universities selected bv the National Conference of Bar Examiners and its desig-nee.
REASON: Provides definition of the General Bar Examination and the Multistate Professional Responsibility Examination.

Proposed Article VI, Sections 4 and 5

Rule I, Section 4 as it now appears:
Section 4. Part I and Part III of the Florida Bar Examination shall be administered on the Tuesday preceding the last Wednesday of February, May, July and October of each calendar year. Part II of the examination is presented simultaneously in the several participating states on the last Wednesday of February and July of each calendar year. Applications for admission into the February administration of the Florida Bar Examination must be postmarked or received not later than the first Tuesday of January. Applications for admission into the May administration of the Florida Bar Examination must be postmarked or received not later than the first Tuesday of April. Applications for admission into the July administration of the Florida Bar Examination must be postmarked or received not later than the first Tuesday in June. Applications for admission into the October administration of the Florida Bar Examination must be, postmarked or received not later than the first Tuesday in September. Late applications shall be returned to the applicant.
Article VI, Sections 4 and 5 as they would appear:
DELETE THE SECTION AND SUBSTITUTE:
Section 4. The General Bar Examination shall be administered on the last Tuesday and Wednesday of February and July of each calendar year. Part B (the Multistate Bar Examination — MBE) is presented simultaneously in the various participating states on the last Wednesday of February and July of each calendar year.
Section 5. Applications for admission to the February administration of the General Bar Examination shall be postmarked or received not later than the first Tuesday in January.
Applications for admission to the July administration of the General Bar Examination shall be postmarked or received not later than the first Tuesday in June.
Applications for admission into the Mul-tistate Professional Responsibility Examination (MPRE) shall be filed with the agen-cv administering that examination within the time limitations set bv that authority. The Multistate Professional Responsibility Examination (MPRE) is currently administered in March. August and November of each year.
REASONS: Reduces the number of examination administrations. Implementation will provide for two General Bar Examinations per year coinciding with the MBE administration (February and July) plus 3 MPRE Examinations (March, August and *621 November) administered by an agency designated by the National Conference of Bar Examiners (ACT). The reduction in the number of administrations is required by the necessity to scale the essay examination total scores to the MBE scaled scores.
Increased numbers of examinees are anticipated at each General Bar Examination, however, implementation of the multiple reader policy will reduce the time required to grade the essay examination.

Proposed Article VI, Section 6

Article II, Section 10(d) as it now appears:
(d) All examination papers produced by applicants for admission to The Florida Bar during their submission to Parts I, II and III of the examination shall be examined by the Board. Upon conclusion of the administration of Part III of the examination, a separate examination on Part I shall be administered. Each examination paper produced by an applicant on Part I or Part III of the examination shall be separately graded and credited with reference to a perfect score of 100%. All examination papers shall be graded and credited by number and not by the applicant’s name. Upon conclusion of Part I and Part III of each examination and a compilation of the grades received by all applicants submitting to Part I or Part III of each examination, the Board shall determine the passing score for each part by adding the grades received by the top 10% of those examined in the respective parts and dividing the total thereof by the number of examinees comprising the top 10% in that part. Those applicants who receive a grade above or within twenty points below such result shall be credited with a passing score for that part of the examination.
Article VI, Section 6 as it would appear:
DELETE THE ENTIRE PARAGRAPH AND SUBSTITUTE:
Section 6. An applicant may elect to submit to the General Bar Examination bv either of the following methods:
(al Method 1 (compensatory model) may be utilized only bv applicants who submit to Parts A and B during the same administration of the General Bar Examination. To pass on Method 1 an applicant must have an average scaled score of 133 or better.
(b) Method 2 (multiple cut off model! may be utilized only bv applicants who:
(1) submitted to the Multistate Bar Examination (MBE) in another jurisdiction, received a scaled score of not less than 133, on the Multistate Bar Examination (MBE) and who elected to submit to only Part A of the General Bar Examination in Florida: or
(2) submitted to the General Bar Examination on a previous administration and received a scaled score of 133 or higher on only one of the two parts of such examination and who wish to retake iust the part previously failed.
Applicants who elect to submit to only one part of the General Bar Examination on a given administration shall utilize Method 2 and may not combine a score attained on one part from one administration with a score on the other part from a different administration. Such applicants shall have taken the Multistate Bar Examination (MBE! previously (unless, of course, the Multistate Bar Examination (MBE) is the only part that they are taking).
An applicant who has attained a passing scaled score on only one part and who elects to submit to the compensatory model (Method 1) of the General Bar Examination as described above shall retain such passing score on said part even though such applicant shall fail to achieve a passing score on that part on subsequent administrations.
REASONS: Implements new examination format — solves problems inherent in the 10/20 Rule pass/fail line determination. Please see Dr. Klein’s report dated January 7,1980 attached (Exhibit A). The pass/fail line recommendation is supported by data from several examinations which were processed and studied by the Board’s consultant, Dr. Klein. Please see letters dated September 10, 1980 and October 7, 1980 attached (Exhibits A-l and A-2).
*622 Proposed Article VI, Section 7
Article II, Section 10(e) & (k) and Rule III, Section 21(a) as they now appear:
(e) The passing score for each administration of Part II of the examination shall be determined by utilization of the basic formula described in subsection (d) of this section applied to the scores of all persons submitting to that administration of Part II of the examination within the State of Florida. Those persons making a passing score on Part II of the examination as determined by this subsection shall be credited with a passing score for Part II provided Part II of the examination, whether taken within or without the State of Florida, was taken at or after a time when the applicant could have qualified to take Part I of the examination. Part II scores obtained through the administration of Part II in February 1976 are the first scores applicable under the provisions of this section.
(k) The Board may utilize the services of trained expert readers. Such readers will be selected solely upon the qualification of such individuals and without regard to the law colleges from which they graduated.
Section 21. (a) The name of the writer of the examination paper is not revealed by the staff to the members of the Board or any source other than the Supreme Court of Florida.
Article VI, Section 7 as it would appear:
DELETE THE SECTION AND SUBSTITUTE:
Section 7. Each examination paper produced bv an applicant on the General Bar Examination shall be separately graded. The scores of each section of Part A shall be converted to a common scale bv a recognized statistical procedure so that each section will be equally weighted. The sum of the converted section scores will be the total score for Part A. AH total scores attained bv the applicants on Part A shall be converted to the same distribution as their Multistate Bar Examination (MBE) scaled scores. Multistate Bar Examination (MBE1 scores (Part B) are the scaled scores on the Multistate Bar Examination (MBE) provided bv the National Conference of Bar Examiners. Scaled scores shall be used in order to assure that the standard of measurement of competence from examination to examination is not affected bv the difficulty of the particular test or the ability of that particular group as distinguished from the general population of applicants. Papers shall be graded and credited bv number and not bv applicant’s name. The name of the writer of the examination paper shall not be revealed bv the staff to the members of the Board or readers or anv source other than the Supreme Court of Florida. Each applicant must attain a scaled score of 133 or better on Part A and on Part B under Method 2 and an average of 133 or better under Method 1, or such scaled score as mav be fixed bv the Court. If the applicant elects to utilize a Part B score through submission to the Multistate Bar Examination (MBE) in an admitting jurisdiction other than the State of Florida, a certificate bearing the National Conference of Bar Examiners scaled score attained in that jurisdiction shall be forwarded directly to the Florida Board of Bar Examiners bv the admitting jurisdiction or the Director of Testing (National Conference of Bar Examiners) on a form supplied for that purpose bv the Florida Board of Bar Examiners (Form 32b
(a) The Board mav utilize the services of trained expert readers. Such readers will be selected solely upon the qualifications of such individuals and without regard to the law colleges from which they graduated.
(b) To assure maximum uniformity in all grading, the Board will utilize the services of multiple calibrated readers.
(cl Each examination paper produced bv an applicant on the Multistate Professional Responsibility Examination (MPRE1 shall be separately graded. The raw score attained bv each applicant shall be converted to a scaled score bv the National Conference of Bar Examiners or its designee in order to assure that the standard of measurement of competence from examination *623 to examination is not affected by the difficulty of the particular test or the ability of that particular group as distinguished from the general population of applicants.
Each applicant must attain a scaled score of 70 or better or such scaled score as may be fixed by the Court-
Each applicant shall be required to provide score reports directly to the Florida Board of Bar Examiners from the National Conference of Bar Examiners or its desig-nee.
REASONS: Please see note on Page 67 for the explanation of the General Bar Examination pass/fail decision. The pass/fail line of 70 scaled was set based on the Board’s evaluation of the first 2 MPREs given in 1980. Please see ACT letter dated May 6, 1980 attached (Exhibit A-3). The statistical summaries of the 2 examinations are also attached (Exhibit A-4). It should be noted that out of 2893 examinees sitting for the August 1980 MPRE, 81.27 percent would have passed with 70 scaled score (approximately 31 raw of 50 questions) while of the 112 scores sent to Florida by applicants sitting for August 1980 MPRE, 75.9 percent would have passed. The March 19, 1980 report shows 91.04 percent of the 4208 sitting would pass using a scaled score of 70 as the line.

Proposed Article VI, Section 8

Rule III, Section 22 as it now appears:
Section 22. Every applicant who is qualified to and who desires to repeat any part of the bar examination shall file an Application for Admission into the Florida Bar Examination on a form prescribed by the Board and such application shall be accompanied by a fee of $75.00 as prescribed under Rule V, Section 56 and shall be filed in the Board’s office within the deadlines as specified under the provisions of Rule I as they pertain to the examination which such applicant desires to take. In those instances wherein the running of the deadline under this section occurs prior to notification being given of the failure of any part of the examination, thus precluding compliance with the deadline by unsuccessful examinees, the deadline shall extend for a period of ten days from the date of notice of failure on the examination.
Article VI, Section 8 as it would appear:
Section 22 8. Every qualified applicant who is qualified to-and who desires to repeat any part of the General Bar Examination shall file an Application for Admission into the Florida General Bar Examination on a form prescribed by the Board and such application shall be accompanied by a fee of $50.00 as prescribed under Rule Vy Section 56 Article V. Section 10 and shall be filed in the Board’s office within the deadlines as specified under the provisions of Rulo I Article VI. Section 5. as they pertain to the examination which such applicant desires to take. In those instances wherein-the running of-the deadline under this section occurs prior to notification-being given of the failure of any part of the examination, thus precluding compliance with- the deadline by unsuccessful examinees, the deadline shall extend for a period of ten days from the date of -notice of failure on the examinations.

Proposed Article VI, Section 9

Article II, Section 10(f) as it now appears:
(f) An applicant must successfully complete each of the three parts of the examination, and all successfully completed portions must have been administered within a period of 25 months. An applicant who fails five times to pass any part or who fails to pass all three parts within 25 months from first passing one part shall be ineligible to sit for any part of the examination until 11 months have elapsed. At the end of that period, the applicant must again successfully complete all parts including those, if any, previously passed. The Application for Admission to The Florida Bar must be filed not later than 180 days from the date of the notice that success has been attained on all three parts of the examination. Failure to comply with such filing deadline will result in required reapplication for admission to the Florida Bar *624 Examination and a second successful completion of the three parts of the examination.
Article VI, Section 9 as it would appear:
DELETE THIS SECTION AND SUBSTITUTE:
Section 9 Cal An applicant must successfully complete the General Bar Examination and the Multistate Professional Re-sponsibilitv Examination (MPRE) within 25 months from first submitting to any portion of the examination in Florida or from the date of an examination in another jurisdiction the score of which has been accepted in lieu of submitting in Florida. An applicant who fails four times to pass any part of the General Bar Examination or who fails to pass both the General Bar Examination and the Multistate Professional Responsibility Examination ÍMPRE) within 25 months shall be ineligible to sit for anv part of the examination until the passage of at least 1 administration of the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE) from the close of the 25-month period. At the end of that period, the applicant must again successfully complete the General Bar Examination and the Multistate Professional Re-sponsibilitv Examination (MPRE) in their entirety regardless of whether a part has been successfully completed in the past.
REASONS: “First submitting” — This is done to set a beginning and ending date for the running of the 25-month period for those persons submitting in Florida as well as those submitting scores from other jurisdictions or the MPRE.
“Accepted” — The use of this word is to limit use to only those scores which are transferred which are above the pass/fail line. This applies to MBE scores as well as MPRE scores. The staff realizes that this is not always fair to the applicant who submits and fails in Florida whose 25 months start at that point as opposed to the applicant who submits a failing score from Georgia which is not “accepted” whose 25-month time limitation has not started running. Yet it will prevent applicants with out-of-state scores from changing their minds as to what scores they really wish to transfer because once “accepted” the 25 months begin.
“Failing four times” — We have not included the MPRE in the four times failing within a 25-month period. The applicant can submit to the MPRE six times within that period.
“Passage of at least one administration of the GBE and MPRE” — The idea here was to have the failing applicant sit out for eleven months; however, eleven months added to 25-month period turned up some inconsistent penalties (sitting out one GBE or two GBE in some cases). To be consistent it was worded that one administration of each must pass before resubmitting.

Proposed Article VI, Section 9(b)

(b) The Application for Admission to The Florida Bar must be filed not later than 180 days from the date of notice that success has been attained on both the General Bar Examination and the Multistate Professional Responsibility Examination (MPRE). Failure to comply with such filing deadlines will result in required reapplication for admission to the Florida Bar Examination and successful completion of all of the examination. The Application for Admission to The Florida Bar must be vigorously pursued bv the applicant. Failure to respond to inquiry from the Board within three months mav result in termination of that application and require reexamination and payment of all fees as if the applicant was applying for the first time.
REASONS: Attacks the problem of the reluctant applicant who has filed within the 180 day limit but refuses to pursue the application by failing to respond to requests for more information.

Proposed Article VI, Section 10

Article II, Section 10(g) as it now appears:
(g) On four dates throughout the year to be determined from time to time by the Supreme Court of Florida, the Board shall make its recommendations to the *625 Supreme Court of Florida in accordance with Article V, Section 22.
Article VI, Section 10 as it would appear:
(g)On four dates From time to time throughout the year, to be determined time to time by the Supreme Court of Florida, the Board shall make its recommendations to the Supreme Court of Florida in accordance with Article V, VII. Section 22 L

Proposed Article VI, Section 11

Article II, Section 10(h) as it now appears:
(h) On each date set forth in subsection (g) the Board shall advise all persons submitting to any part of the examination within the State of Florida at the last administration thereof, whether such person has passed or failed any or all parts of said examination. Those persons who have at such examination completed the requirement of having passed all parts of the examination but who have not been recommended to the Supreme Court for admission to The Florida Bar will be further advised of the status of their applications.
Article VI, Section 11 as it would appear:
(h) 1L On each date set forth in subsection (g) pursuant to Article VI. Section 10. the Board shall advise all persons submitting to any part of the General Bar Examination within the State of Florida at the last administration thereof, whether such person has passed or failed any or all parts of said examination. At that time those persons who have at-such-examination completed the requirements of having passed all parts of the examination but who have not been recommended to the Supreme Court for admission to The Florida Bar will be further advised of the status of their applications.

Proposed Article VI, Section 12

Article II, Section 10(i) as it now appears:
(i) An applicant submitting to Part II of the examination outside of the State of Florida shall be advised by the Board whether said applicant’s score qualifies as a passing score.
Article VI, Section 12 as it would appear:
Section (i) 12. Applicants will be notified whether their Multistate Professional Responsibility Examination ÍMPRE1 scores qualify as a passing score and an applicants submitting to Part II B of the General Bar Examination outside of the State of Florida shall be advised by the Board whether said applicant’s their scores qualifies qualify as a passing scores.

Proposed Article VI, Section 13

Article II, Section 10(j) as it now appears:
(j)Except as provided in this section, no information regarding applicants’ scores shall be released except as directed by the Supreme Court of Florida.
Article VI, Section 13 as it would appear:
(j) Section 13. Except as provided in this section. No information regarding applicants’ scores shall be released except as directed by the Supreme Court of Florida.

Proposed Article VII

Article V, Section 22 as it now appears:
ARTICLE V
CERTIFICATION TO THE SUPREME COURT AND ADMISSION TO THE FLORIDA BAR
Section 22. Every applicant who has complied with the requirements of the applicable rules for admission into the bar examinations, who has submitted to the examinations and attained scores above the minimum required, who has met the requirements as to character and fitness, and who has:
(a) Furnished to the Board satisfactory evidence that an accredited law school as specified in Section 21(b) herein has conferred upon the applicant the degree of Bachelor of Laws or Doctor of Jurisprudence and who has complied with all other requirements for admission to practice the profession of law;
(b) Or complied with all requirements except the conferral of the first degree in law as set out in Section 21(c) herein, *626 but who has been declared by the Board as being fully qualified under the aforementioned Section 21(c)
shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for admission to The Florida Bar. If the Court is satisfied as to the qualifications of the applicants so recommended, an Order of admission shall be made and entered in the minutes of the Court, and it shall designate the manner in which all applicants will take the oath. Two induction ceremonies shall be scheduled each year at which the oath shall be administered by the Chief Justice of the Court or a Justice thereof before the Court in formal session or by the Chief Judge of a District Court of Appeal or a Judge thereof before a District Court of Appeal in formal session. Any applicant who chooses not to attend such formal session may take the oath before any resident Circuit Judge or before such other official authorized to administer oaths. All applicants shall present themselves for such administration of the oath not later than 90 days from the date of notification of eligibility for admission by the Clerk of the Supreme Court. No certificate of admission to practice shall be issued until the oath of such applicant has been filed in the office of the Clerk of the Supreme Court. The Clerk shall maintain a permanent register of all persons so admitted.
Should any applicant gain admission to The Florida Bar upon an Application for Admission into the Florida Bar Examination, an Application for Admission to The Florida Bar, or an amendment or a supplement thereto which, within 12 months of admission to The Florida Bar, is revealed to have been falsified in any respect, the Board, after investigation and hearings, shall make its findings and recommendations as to revocation of any license issued to any such applicant and shall file its findings with the Supreme Court of Florida for final determination by the Court.
Article VII as it would appear:
ARTICLE ¥ VII
CERTIFICATION TO THE SUPREME COURT AND ADMISSION TO THE FLORIDA BAR
Section 22 L Every applicant who has complied with the requirements of the applicable rules for admission into the Florida Bar Examination, who has submitted to tho examinations - and attained passing scores on the examination above-the minimum required, who has met the requirements as to character and fitness, and who has:
(a) Furnished to the Board satisfactory evidence that an accredited law school as specified in Article III. Section 21(b) 1(b). has conferred upon the applicant the degree of Bachelor of Laws or Doctor of Jurisprudence and who has complied with all other requirements for admission to practice the profession of law;
(b) Or complied with all requirements except the conferral of the first degree in law as set out in Article III. Section 21(c) 1(c) but who has been declared by the Board as being fully qualified under the aforementioned Article III. Section 21(e) 1(c)
shall be recommended by the Florida Board of Bar Examiners to the Supreme Court of Florida for admission to The Florida Bar. If the Court is satisfied as to the qualifications of the applicant so recommended, an Order of admission shall be made and entered in the minutes of the Court, and it shall designate the manner in which all applicants will take the oath. Two inductions ceremonies shall be scheduled each year at which the oath shall be administered by the Chief Justice of the Court or a Justice thereof before the Court in formal session or by the Chief Judge of a District Court of Appeal or a Judge thereof before a District Court of Appeal in formal session. Any applicant who chooses not to attend such formal session may take the oath before any resident Circuit Judge or before such other official authorized to administer oaths. All applicants shall present themselves for such administration of the oath not later than 90 days from the date of *627 notification of eligibility for admission by the Clerk of the Supreme Court of Florida. No certificate of admission to practice shall be issued until the oath of such applicant has been filed in the office of the Clerk of the Supreme Court. The Clerk shall maintain a permanent register of all persons so admitted.
Section 2. Should any applicant gain admission to The Florida Bar upon an Application for Admission into the General Florida Bar Examination, an Application for Admission to The Florida Bar, or an amendment or a supplement thereto which, within 12 months of admission to The Florida Bar, is revealed to have been falsified in any respect, the Board, after investigation and hearings, shall make its findings and recommendations as to revocation of any license issued to any such applicant and shall file its findings with the Supreme Court of Florida for final determination by the Court.
Rule III, Section 23 as it now appears:
Section 23. Before recommending an applicant for admission to practice law in the State of Florida, the Board shall satisfy itself that each applicant has an adequate knowledge of the Code of Professional Responsibility, the Code of Judicial Conduct, and the standards and ideals of the profession, and is otherwise a fit person to take the oath and perform the obligations and responsibilities of an attorney.
Delete this section.
REASON: This is covered in revised Rules by Article VI, Section 1 and would be redundant.